711 P.2d 653

The MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY, a Col-
orado corporation, Plaintiff-Appellee,

v.

Earl D. KENNEDY,
Defendant-Appellant.

No. 1 CA–CIV 7857.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 21, 1985.

Robert A. Hayes, Phoenix, for defendant-
appellant.

Fennemore, Craig, von Ammon, Udall &
Powers, P.C. by C. Webb Crockett, Timo-

thy Berg, Jane E. Nicoletti-Jones, Phoenix, for plaintiff-appellee.

## OPINION

GRANT, Presiding Judge.

Appellant Earl D. Kennedy (Kennedy) is the owner of two adjoining five acre parcels of land in Phoenix, Arizona. Kennedy acquired the first parcel directly from the federal government by a land patent pursuant to the Small Tract Act, 43 U.S.C.A. § 682a *et seq.* (repealed 1976). Kennedy acquired the second parcel, originally conveyed through the Small Tract Act, by quitclaim deed. This parcel is bounded by Paradise Lane on the north, Monte Cristo Avenue on the south and by 38th Avenue and 39th Avenue on the east and west respectively. Apparently, it is this latter parcel which is the subject of controversy.

> The patents provide that the parcels are: subject to a right-of-way not exceeding 33 feet in width, for roadway and public utility purposes, to be located across said land or as near as practicable to the exterior boundaries.

The City of Phoenix has easements along 39th Avenue and Monte Cristo Avenue.[1]

Mountain States Telephone and Telegraph Company (Mountain States) is a public utility and Colorado corporation. In 1976, Mountain States installed cable in the north 33 feet of the property boundary. Kennedy demanded that Mountain States either pay rent for the use of the land or remove the cable, or else he would remove it himself.

Mountain States filed a declaratory judgment action in 1982 seeking a determination that as a public utility it was entitled to a right-of-way free from interference by Kennedy. Kennedy filed an answer and alternative counterclaim that the part of the patent granting an easement was void

for indefiniteness or that Mountain States was a trespasser.

During the pendency of Mountain State's action, Division 2 of this court rendered a decision in *City of Phoenix v. Kennedy,* 138 Ariz. 406, 675 P.2d 293 (App.1983) (*Kennedy I*). *Kennedy I* concerned a challenge by the instant appellant to a right-of-way claimed by the City. The City filed a declaratory judgment action. The trial judge ruled in the City's favor and the decision was affirmed on appeal.

Mountain States filed a motion for summary judgment, relying on *Kennedy I.* Kennedy's response, arguing summary judgment would be improper because a material issue of fact remained in dispute, also relied on the earlier case. The trial court ruled that Kennedy's parcel was subject to a right-of-way along the north boundary and that Mountain States was lawfully located within the right-of-way. The trial judge also awarded attorney's fees to Mountain States.

Kennedy's appeal from the trial court's ruling raises the issues of whether the patent provided for multiple rights-of-way on the parcel and whether Mountain States was entitled to attorney's fees.

## INTERPRETATION OF THE PATENT

In his opening brief Kennedy outlines the sequence of the rights-of-way claimed across his land. He states that the City of Phoenix first took an easement along the western boundary in 1974. In 1976, Mountain States claimed the northern 33 feet as a right-of-way. The City took another right-of-way along the southern boundary in 1979. It was this last easement that was the subject of controversy in *Kennedy I.*

Kennedy's position in *Kennedy I* was in part that the language of the patents was insufficient to create an enforceable right-of-way. The court of appeals disagreed:

> "[T]he words 'easement' and 'right-of-way' have been used interchangeably by the courts in treating statutes reserving rights-of-way in favor of the United States." *Myers v. United States,* 378 F.2d 696, 703 (Ct.Cl.1967).

---

1. "The grant of a right of way is an easement.... The term 'right-of-way' is merely descriptive of the easement rights." *State ex rel. State Highway Commission v. Dannevik,* 79 N.M. 630, 632, 447 P.2d 510, 512 (1968).

The language in the patents is sufficient to create a floating easement for a right-of-way which, when created, is not limited to any specific area on the servient tenement but becomes fixed by the first usage thereof.

*Id.*, 138 Ariz. at 408, 675 P.2d at 295.

Kennedy interprets the above-quoted language as a holding by the court that there could be only one right-of-way on the land. Thus, Kennedy now argues, the 1974 claim by the City of Phoenix established the easement by first usage and subsequent claims, including the 1979 claim, were unlawful. Kennedy admits that the court in *Kennedy I* was not apprised of the 1976 and 1974 pre-existing claimed rights-of-way.

In view of the admittedly inadequate record before the appellate court in *Kennedy I*, we must read that court's holding very narrowly to be that the patents' language was sufficient to create a right-of-way as claimed by the City of Phoenix in 1979.

*Kennedy I*, then, does not answer the issue in this appeal.

We turn to the law of public land grant interpretation to determine whether the patent provided for a right-of-way along each boundary.

As a general rule, where the language of a public land grant is subject to reasonable doubt such ambiguities are to be resolved strictly against the grantee and in favor of the government. It will be noted that this is just the reverse of the rule controlling the construction of grants or conveyances by private grantors.

The rule of strict construction has been rationalized on the basis that public land grants are most always procured at the instance of the grantees. For the protection of the government and public, therefore, the grantee is estopped to claim a broader meaning than was expressed or necessarily implied. The utility of this rule as a reflection of legislative intent is greatly magnified where a strict interpretation is claimed to prove a reservation of the government's police power, to avoid encroachment upon a former and concededly vested claim of another, or where the grant consists of an outright gift without an exchange of consideration.

3 Sutherland, *Statutes and Statutory Construction* § 64.07 at 137 (4th ed.1974) (footnotes omitted). As to reservations in land grants, "nothing passes except what is conveyed in clear language, and ... if there are doubts they are resolved for the Government, not against it." *United States v. Union Pacific R.R. Co.*, 353 U.S. 112, 116, 77 S.Ct. 685, 687, 1 L.Ed.2d 693 (1957). *C.f.*, *Allison v. State*, 101 Ariz. 418, 420 P.2d 289 (1966) (grantee under federal land patent has burden of showing there was no right-of-way for federal aid highway across property). The principle of construing grants in favor of the government typically arises in cases where the federal government has reserved some right to itself. *E.g.*, *Andrus v. Charlestone Stone Products Co., Inc.*, 436 U.S. 604, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978) (when a mining claim by stone products company on federal land required presence of "valuable minerals" in the land, claim could not be validly based on presence of water). *United States v. Union Pacific R.R. Co.*, (federal government's reservation of "mineral lands," in grant of right-of-way to railroad, included mineral rights).

■ We hold the rule and its rationale equally applicable when the federal government reserves an interest in land for entities not party to the grant. The Small Tract Act authorized the sale of public lands classified as "valuable for residence, recreation, business or community site purposes...." 43 U.S.C.A. § 682a. The rights-of-way were created to provide street and utility access to the parcel. *State, Dept. of Highways v. Green*, 586 P.2d 595, 603 (Alaska 1978). The purpose of the rights-of-way could best be fulfilled by permitting access along all boundaries. The addition of roadways and public utilities by entities such as the City of Phoenix and Mountain States would contribute to the land becoming more valuable for the

site purposes specified in the Act. The application of the public land grant rule of interpretation is also supported by the relatively small consideration required to purchase a five acre tract under the Small Tract Act. 3 Sutherland, *supra.* "No tract shall be sold for less than the cost of making any survey necessary to describe properly the land sold," 43 U.S.C.A. § 682b.

■ Applying the rules of construction for a grant of public land and a restriction thereon, we hold that the patent grants a right-of-way along each boundary. Therefore, Mountain State's placement of telephone cable within the specified 33 feet of the boundary was lawful.

### ATTORNEY'S FEES

The trial court awarded Mountain States attorney's fees and costs for a total of $2,581.50 without specifying the reason for the award. On appeal, Kennedy argues that Mountain States was not entitled to attorney's fees because the matter did not arise under contract, A.R.S. § 12–341.-01(A), and because his pleadings were not submitted in bad faith, A.R.S. § 12–341.-01(C). Mountain States argues it was entitled to attorney's fees under either section. The record does not show that Kennedy defended Mountain State's suit in bad faith. Therefore, for the award of attorney's fees to Mountain States to be affirmed, the claim must arise out of contract, A.R.S. § 12–341.01.

■ A land patent is a form of deed. 5B G. Thompson, *The Modern Law of Real Property* § 2725 (1978). A grantee who accepts a deed with reservations has entered into a contractual relationship. *C.f. Pinetop Lakes Ass'n v. Hatch,* 135 Ariz. 196, 659 P.2d 1341 (App.1983) (grantee who accepts a deed containing restrictive covenants enters into contractual relationship). Thus, between the federal government and the grantee Kennedy there was a contractual relationship.

We find that Mountain States is an intended beneficiary of the contractual relationship between the federal government and Kennedy. The *Restatement (Second) of Contracts* § 302(1)(b) (1981) defines an intended or third party donee beneficiary:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ...

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Illustration 10 to comment d of § 302 provides a useful analogy of the principle:

A, the operator of a chicken processing and fertilizer plant, contracts with B, a municipality, to use B's sewage system. With the purpose of preventing harm to landowners downstream from its system, B obtains from A a promise to remove specified types of waste from its deposits into the system. C, a downstream landowner, is an intended beneficiary under Subsection (1)(b).

*See also Supplies for Industry, Inc. v. Christensen,* 135 Ariz. 107, 659 P.2d 660 (App.1983) (employment contract between employee of subsidiary corporation and subsidiary's parent corporation was intended to make subsidiary a beneficiary; no motion for attorney's fees mentioned).

■ Mountain States as an intended beneficiary of the patent was entitled to its attorney's fees pursuant to A.R.S. § 12–341.01(A). As that statute requires, Mountain States was the successful party in a "contested action arising out of contract...."

The judgment of the trial court is affirmed.

MEYERSON, P.J., and HAIRE, J., concur.