997 P.2d 1192

**Arthur S. BERNAL, a married man dealing with his sole and separate property, Plaintiff/Appellant,**

v.

**Ronald LOEKS and Donna Loeks, husband and wife; Gary E. McCusker and Kerry McCusker, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 99–0107.

Court of Appeals of Arizona, Division 2, Department B.

March 16, 2000.

Cruse, Firetag & Bock, P.C. by Jules I. Firetag and Paul F. Dowdell, Phoenix, Attorneys for Plaintiff/Appellant.

William F. Doran, Phoenix, Attorney for Defendants/Appellees.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gary L. Birnbaum and Michael S. Rubin, Phoenix, Attorneys for Amicus Curiae Land Title Association of Arizona.

*OPINION*

BRAMMER, Presiding Judge.

¶ 1  Arthur Bernal appeals from the trial court's order granting summary judgment in favor of the defendants/appellees Ronald and Donna Loeks and Gary and Kerry McCusker on his claim that they had unlawfully denied him access to rights-of-way that had been reserved on their properties in federal land patents. We reverse.

**Facts and Procedural History**

¶ 2  We view the facts in the light most favorable to the party against whom summary judgment was entered. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990). Bernal and his neighbors the Loekses and McCuskers all own parcels of land that had originally been acquired from the federal government by land patents pursuant to the Small Tract Act, 43 U.S.C.A. §§ 682a through 682e (repealed 1976). Bernal's property is bounded on the east by the north-south trending Cedar Drive. His house faces this roadway, which provides access to his property. The back, west boundary of Bernal's property abuts the east boundary of the Loekses' property which, in turn, is bounded on the north by the McCuskers' property. The Loekses' and McCuskers' properties are bounded on the west by the north-south trending Meridian Road; this roadway provides access to their properties. Bernal's property is bisected by a north-south trending arroyo. He can access the west half of his property by using a foot bridge that spans the wash. However, he would like to keep horses on the west section, access to which can be readily gained only west of the arroyo.

¶ 3  Each of the patents for lots of land from which the parties' parcels were subdivided provides that the patent "is subject to a right-of-way not exceeding 33 feet in width,

for roadway and public utilities purposes, to be located along" three of the lot's boundaries. Hence, each of the parties' parcels are subject to a right-of-way along two of its boundaries. These rights-of-way and others in the area form an "H" pattern, with the uprights representing Cedar Drive and Meridian Road and the crossbar representing a yet-to-be-built connecting roadway, prospectively named Moonvista Street. Bernal's and the Loekses' parcels lie directly below the crossbar and the McCuskers' parcel lies directly above.

¶4 In April 1998, Obie O. Rooker, the previous owner of Bernal's parcel, brought an action seeking to quiet title to, and to enjoin the Loekses and the McCuskers from blocking his access to, the rights-of-way along, respectively, the northern and southern boundaries of their properties, which together form a portion of the prospective Moonvista Street. Rooker averred that his property was in escrow, the closing of which was dependent upon his acquiring physical access to the western portion of his property. He claimed that the Loekses had erected a fence across, and had deposited piles of soil, rocks, and debris on, the rights-of-way, which prevented him from acquiring such access. Shortly thereafter, Bernal acquired ownership of the parcel and was substituted as the plaintiff in the action.

¶5 In December 1998, Bernal moved for summary judgment, claiming that he had "access rights" to the "right-of-way easements" on the defendants' lands that had been reserved in the federal patents. He argued that, because the reservations of rights-of-ways for roadway purposes in the patents "were inserted ... for the mutual benefit of the grantees and the general public by providing [property owners in the vicinity of lands subject to the rights-of-way] a means of acquiring ingress and egress" to their property, the federal government, as grantor, must have intended that those property owners could use the rights-of-way, even if, as here, the state or local government had not yet constructed the roadways. The trial court disagreed, finding that:

... although the patent reservation of an easement of 33 feet in width [on the parties' properties] states it is for roadway and public utilities [purposes], it is well established case law that the legislative intent of creating the reserved easement was to preserve for future public action the ability to utilize it for public roads and public utilities; that, although Pinal County accepted all such reserved easements by resolution of the Board of Supervisors, ... the easements in question (which are part of the proposed Moonvista [Street]) have not been dedicated and established by Pinal County as a public roadway;

That there is no private right to enforce the easements reserved by the Federal patents and the subsequent deeds acquired by the parties and their successors in interest.

The trial court therefore denied Bernal's motion for summary judgment and granted summary judgment for the defendants. It denied Bernal's motion for a new trial, and this appeal followed.

## Standard of Review

¶6 Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S. *See Allyn.* When reviewing de novo the trial court's grant or denial of summary judgment, we apply the same standard as it used in ruling on the summary judgment motion in the first instance. *Id.*

## Discussion

¶7 The Small Tract Act provided for the sale or lease of small tracts of federal land "for residence, recreation, business, or community site purposes." § 682a. It did not specifically provide for the reservation of rights-of-way in the land patents but simply permitted the Secretary of the Interior to reserve in the patents "such rules and regulations" as he or she deemed necessary. *Id.* Bernal argues the trial court erred in holding that the reservation of rights-of-way "for roadway purposes" in the patents was intended solely for the eventual construction of "public," that is, government built and maintained, roadways and that nearby property owners have no private right "to use or

enforce" the rights-of-way. For the following reasons, we agree with Bernal.

¶ 8 Initially, we find misplaced the trial court's reliance on case law to support its conclusion that private parties could not use or enforce the right-of-way provisions reserved in the federal patents. The handful of cases that have addressed these provisions, two of which are from Arizona, were all brought or defended by either a government entity seeking to build a public roadway, *City of Phoenix v. Kennedy* (*Kennedy I*), 138 Ariz. 406, 675 P.2d 293 (App.1983), or a utility company seeking to install a public utility. *Mountain States Telephone and Telegraph Co. v. Kennedy* (*Kennedy II*), 147 Ariz. 514, 711 P.2d 653 (App.1985).[1] *See also State v. Alaska Land Title Ass'n*, 667 P.2d 714 (Alaska 1983); *State Dep't of Highways v. Green*, 586 P.2d 595 (Alaska 1978); *State Dep't of Highways v. Crosby*, 410 P.2d 724 (Alaska 1966). Accordingly, none had occasion to address whether nearby property owners could use and enforce the rights-of-way to secure access to properties located in the vicinity of parcels subject to them. Not only did the cases not directly address this issue, but we find nothing in these cases to suggest that these property owners are precluded from doing so.

¶ 9 Nor do we find such a conclusion supported by the "rules and regulations" the Secretary promulgated pursuant to the Small Tract Act. See 43 C.F.R. §§ 2730.0–2 through 2731.6–4 (removed 1980). Section 2731.6–2, entitled "Rights-of-way," the only provision that addressed the reservation of rights-of-way in the patents,[2] provides simply:

> The classification order may provide for rights-of-way over each tract for street and road purposes and for public utilities. If

the classification order does not so provide, the right-of-way will be 50 feet along the boundaries of the tract.

The subsection allows for roadway use without qualification. Had the Secretary intended that, like utilities, the rights-of-way be limited to public street and road purposes, such language easily could have been included. *Cf. Tanner Cos. v. Arizona State Land Dep't*, 142 Ariz. 183, 189, 688 P.2d 1075, 1081 (App.1984) (basic tenet of statutory construction is that legislature presumed to express its meaning in as clear a manner as possible; had it "meant to limit the common mineral materials statute to materials commonly used for aggregate, ... fill, etc., it could have just said that"). Although utilities almost invariably are installed and maintained by public entities, this is obviously not true for roadways, especially those that are forged in rural, newly developing areas. That the Secretary did not modify the phrase "street and road purposes" with the word "public," therefore, evinces a clear intent that such roadways are not limited to those that are publicly built and maintained.

¶ 10 As we stated in *Kennedy I*, the "intent behind the [federal land] grant was to utilize public lands effectively." 138 Ariz. at 408, 675 P.2d at 295. The court in *Green* noted that the objective of the right-of-way provision in the patents was to provide "access" to the parcels. 586 P.2d at 601. We cannot, therefore, conclude that the Secretary intended that patent holders be denied access to their parcels, effectively landlocking them, until such time as the government funds and constructs roadways providing such access. Indeed, until patent holders can physically access their parcels, they can-

1. In *Kennedy I*, we upheld the city's right to improve a street and install public utilities on a federal patent holder's parcels, the patents for which contained right-of-way provisions virtually identical to that at issue here. In *Kennedy II*, Division One of this court upheld a utility company's right to install cable lines in the same rights-of-way, concluding that, like municipalities, utility companies were intended beneficiaries of the reservation.

2. In *Kennedy I*, we cited §§ 2731.6–2 and 2730.0–2 for the proposition that the "reservation of the right-of-way was included so as to avoid imposing the heavy burden on local governments of subsequently having to acquire an easement when the time came to install utilities and roadways." 138 Ariz. at 408, 675 P.2d at 295. Although we still believe that proposition to be sound, neither provision we cited, nor any others in the rules and regulations, addressed the purpose or purposes of reserving rights-of-way in the federal patents.

not use them. It is only when the parcels are used, however, that the government is justified in expending the time and resources needed to build such roadways.[3] We decline to fashion a rule that would create such an incongruity, especially given that such a ruling would be contrary not only to the plain language of the Act, but also to both § 2731.6–2 and the right-of-way provision.

¶ 11 We conclude the trial court erred in finding Bernal precluded from using and enforcing the rights-of-way located on the defendants' properties. Accordingly, we reverse the order granting summary judgment for the defendants and remand the case to the superior court for entry of summary judgment in favor of Bernal on his first cause of action and for further proceedings consistent with this decision on his second cause of action to determine the extent of the injunctive relief to which he is entitled.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and JOSEPH W. HOWARD, Judge.

**3.** In fact, the record reflects that although Pinal County has accepted the dedication of the rights-of-way contained in the patents, it has decided *not to* immediately fund and build the roadways over them. Accordingly, an official with the county's Department of Public Works averred that his department has, "[in] practice, and continuing until such time, if ever, that the County funds, constructs and establishes County streets and/or highways along these patent easements, ... conceded the right to use and enforce these easements to adjoining landowners for ingress and egress purposes as evidenced by the Coun-

ty's recognition of these patent easements as legal access to affected properties." Moreover, the county's Planning and Development Department considers the reservation of rights-of-way in the federal patents "to constitute sufficient legal access upon which to issue ... zoning clearance[s]." For these and other reasons, the Land Title Association of Arizona, in its amicus curiae brief, claims that, if the trial court's ruling is affirmed, "the *validity* of many land titles may be thrown into jeopardy and the *value* of countless properties will be affected."