191 P.3d 1030

**Perry NEAL and Deborah Neal, husband and wife; and Scott J. Pitts and Denise Pitts, husband and wife, Plaintiffs/Appellees,**

v.

**Patricia M. BROWN, an unmarried woman, Defendant/Appellant.**

**No. 1 CA–CV 06–0756.**

Court of Appeals of Arizona, Division 1, Department A.

July 8, 2008.

---

Warner Angle Hallam Jackson & Formanek PLC By Jack Daniel Klausner, J. Brent Welker, Phoenix, Attorneys for Defendant/Appellant.

**OPINION**

HALL, Judge.

¶ 1 Patricia M. Brown appeals from the summary judgment entered in favor of her neighbors, Perry and Deborah Neal and Scott and Denise Pitts (collectively, the Neighbors), on their claims for quiet title to a right-of-way over Brown's property and injunctive relief requiring that Brown remove a fence blocking access to the right-of-way. In *Bernal v. Loeks,* 196 Ariz. 363, 997 P.2d 1192 (App.2000), we held that a landlocked parcel owner could enforce a right-of-way reserved for roadway purposes under land patents issued by the United States pursuant to the Small Tract Act (the Act), 43 U.S.C. § 682a, repealed October 1976. This case requires us to determine whether *Bernal* should be extended to such a parcel owner when an adequate roadway already exists. We conclude that a parcel owner does not possess an absolute right to enforce a right-of-way reserved under federal land patents issued pursuant to the Act, but may do so only when such use is consistent with the purposes of the Act. Accordingly, because the Neighbors acknowledge that the existing roadway provides them full access to and use of their properties, they are not entitled to enforce the right-of-way over Brown's property. Therefore, we reverse the trial court's grant of summary judgment to the Neighbors and remand with directions to enter judgment in favor of Brown on the Neighbors' complaint.

**FACTS AND PROCEDURAL HISTORY**

¶ 2 We view the facts and the inferences drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction,* 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). The Neals own property on the north side of Skinner Drive in Cave Creek, Arizona. The Pitts own property on the south side of Skinner Drive across the street from the Neals.

Mariscal Weeks McIntyre & Friedlander PC By Michael R. Scheurich, Robert C. Brown, Phoenix, Attorneys for Plaintiffs/Appellees.

**16**

¶ 3 Brown also owns property on Skinner Drive, west of the Neals and the Pitts on the north side of Skinner Drive. The original land patent for Brown's property was issued pursuant to the Act and includes the following language:

This patent is subject to a right-of-way not exceeding 33–feet in width, for roadway and public utilities purposes, to be located along the east and south boundaries of said land.

Skinner Drive was constructed along the southern portion of Brown's property, and the Neighbors have used Skinner Drive for years to access their properties.

¶ 4 Brown cleared and graded a 25–foot road south of her southern boundary line. This road is located entirely within a similar 33–foot easement in a parcel located immediately to the south of the Brown property. After obtaining a permit from Maricopa County, she constructed a fence running east to west along the southern boundary of her property; the fence was located a minimum of two inches north of her southern boundary to a maximum of 66–feet north of her southern boundary. The ends of the fence run north along the east and west boundaries enclosing some or all of the area designated as a right-of-way. The roadway, which retained the name Skinner Drive, provides ample access for vehicle travel to all properties along the roadway, including those of the Neighbors.

¶ 5 In February 2006, the Neighbors filed a complaint against Brown for quiet title and an injunction. They alleged that they were the owners and beneficiaries of an easement over Brown's property created by the land patent and that Brown's construction of a fence deprived them of their right to use the easement. The Neighbors sought an order directing Brown to remove the fence and permanently enjoining her from interfering with their right to use the easement.

¶ 6 After Brown answered the complaint, the Neighbors filed a motion for summary judgment and Brown responded and filed a cross-motion. The Neighbors argued that Brown's fence prevented them from using the easement to access their properties, although they conceded that Skinner Drive provided access to their properties over the graded area. They contended that the fact that they had other access to their property or that the grading of the roadway provided even better access to their property was of no consequence. They claimed that they had a property right in the right-of-way, that Brown was obstructing that right-of-way, that they had a right to use the right-of-way for ingress and egress unhampered by obstructions, and that they were entitled to enforce their rights and require Brown to remove the fence.[1] They also argued that Brown changed the location of the right-of-way without obtaining their consent.

¶ 7 Brown disputed that the Neighbors were beneficiaries of the right-of-way, asserting that the reservation was for the benefit of public entities and to provide landowners access to landlocked property. Brown had obtained a permit to construct the fence in its location from Maricopa County and argued that Skinner Drive was a dedicated roadway that provided the Neighbors with abundant access to their properties without their having to cross Brown's property. Further, Brown claimed that the Neighbors did not have the right to determine how the right-of-way could be used because Maricopa County had authorized Brown to construct the fence within the area of the right-of-way on her property. Under these circumstances, Brown asserted that any objection the Neighbors had regarding the size or location of Skinner Drive must be raised with Maricopa County. In support, Brown provided the affidavits of John K. Graham, an attorney for a title insurance company, and Gregory B. Junkar, a registered land surveyor.

¶ 8 Based on his review of the deeds of the parties involved as well as county documents permitting the fence construction, Graham opined that Maricopa County exercised its

---

1. When Brown asserted that one or both of the Neighbors also erected fences that extend over the right-of-ways associated with their properties, the Neighbors claimed that her contention "is irrelevant because she cannot (and does not) allege [the Neighbors'] alleged violations obstruct access to her property or otherwise injure her in any way."

entitlement to the right-of-way by accepting Skinner Drive using the patents of the southern properties and by permitting Brown to construct her fence within the right-of-way. Graham concluded that, in doing so, Maricopa County made a determination regarding the reasonable use of the Brown right-of-way. Graham opined that Maricopa County, not the Neighbors, had the right to determine where Skinner Drive would be located. The Neighbors moved to strike Graham's affidavit and Brown's argument related to the affidavit on the grounds that Graham's opinions were inadmissible because they impermissibly opined on issues to be decided by the trial court.

¶ 9 At oral argument on the parties' cross-motions, the parties agreed that the trial court would not consider Graham's affidavit as sworn testimony, but would consider it as argument. In its under-advisement ruling, the trial court stated:

> The parties agree that *Bernal v. Loeks,* 196 Ariz. 363, 997 P.2d 1192 (App.2000) is controlling. Plaintiff argues that *Bernal* establishes the easement right across Defendant's property for owners in the vicinity. Defendant argues that *Bernal* allows for a "right-of-way" only if it is necessary for ingress and egress.

> The issue before the *Bernal* Court was whether nearby property owners had a private right to use or enforce the rights-of-way set forth in an original land patent. The Court held in *Bernal* that nearby property owners had a private right to enforce the rights-of-way. An important factor in the Court's consideration in *Bernal* was that the objective of the right-of-way provision in the patents was to provide "access" to the parcels. However, *Bernal* did not indicate that the private right to enforce the rights-of-way required proof that the Plaintiff needed the right-of-way to provide access to his property. The *Bernal* Court held that the private right to enforce the right-of-way existed but did not place any limits on the right of enforcement.

> This Court finds that the right-of-way exists to benefit the Plaintiffs. The right-of-way is not conditional and does not depend upon the Plaintiffs proving a need to use the right-of-way to access their property. The right-of-way amounts to an easement right.

The trial court granted the Neighbors' motion for summary judgment and denied Brown's cross-motion. The trial court also ordered Brown to remove the fence and enjoined her from interfering with the Neighbors' use of the easement.

¶ 10 After final judgment was entered in favor of the Neighbors, Brown timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) (2003).

## DISCUSSION

¶ 11 Summary judgment must be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson,* 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We review the decision on the record made in the trial court. *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken,* 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App. 1994).

¶ 12 Because "grants of public lands are instruments to serve the public welfare, they should in all cases receive a reasonable interpretation, consistent with common sense, and with a view to the objects and purposes sought to be accomplished." 3 Sutherland, *Statutes and Statutory Construction* § 64.07 at 138 (4th ed.1974). The Act provided for the sale of public lands "for residence, recreation, business or community site purposes." *Mountain States Tel. & Tel. Co. v. Kennedy,* 147 Ariz. 514, 516, 711 P.2d 653, 655 (App.1985). The rights-of-way reserved in the land grants were created to provide street and utility access and to alleviate the burden on local governments to acquire easements to install roads and utilities. *Id.*

¶ 13 Brown argues that the trial court erred in concluding that the land patent for her property created an unconditional easement over the entire 33–foot width regardless of necessity. She argues that because the Neighbors have access to their properties over Skinner Drive, they are not entitled to enforce the right-of-way over her property. The Neighbors argue that they have a property interest in the easement and are entitled to enforce it regardless whether they have sufficient or even better access to their properties over Skinner Drive.

¶ 14 Both parties rely on *Bernal* in support of their respective positions. The plaintiff in *Bernal* sought to enforce land patent rights-of-way over the property of two neighbors to access a portion of his property to which he otherwise had only foot access because his property was bisected by an arroyo. 196 Ariz. at 363, ¶ 2, 997 P.2d at 1192. Because of the restricted access, he could make only limited use of the property. *Id.* The rights-of-way over which he sought access were part of a yet-to-be-built road. *Id.* at 364, ¶ 5, 997 P.2d at 1193. Noting that the purpose of the land grant was to effectively use public land and the objective of the rights-of-way was to provide access to the parcels, the court characterized the issue as being "whether nearby property owners could use and enforce the rights-of-way to *secure* access to properties located in the vicinity of parcels subject to them." *Id.* at 365, ¶ 8, 997 P.2d at 1194 (emphasis added). Because patent holders cannot use their property until they gain access to it and the government is unlikely to expend resources to construct roads for property that is not being used, *id.* at 365–66, ¶ 10, 997 P.2d at 1194–95, the court reasoned that the intent of the Act to facilitate the effective use of public lands would be frustrated if nearby property owners could not enforce the rights-of-way. *Id.* The court therefore held that the plaintiff could enforce the rights-of-way. *Id.* at 366, ¶ 11, 997 P.2d at 1195.

¶ 15 The Neighbors assert that *Bernal* is controlling because they live in the vicinity of Brown's property and could use the right-of-way to access their property. Thus, according to the Neighbors, they are beneficiaries of the Brown right-of-way. Brown does not dispute that *Bernal* recognizes a private right of action to enforce a land patent right-of-way, but asserts that the right is dependent on the need to access neighboring property.

¶ 16 The facts in *Bernal* are different from those here. The Neighbors concede that they already have full access to their properties via Skinner Drive, which is parallel with and contiguous to the right-of-way the Neighbors seek to use. Likewise, the Neighbors have not claimed that their inability to use the portion of the right-of-way enclosed by Brown's fence in any way hinders their use of their own property. In effect, their claimed injury is the denial of their use of the right-of-way, not any consequence of that denial. Therefore, the purposes of the land grant and the related rights-of-way, which were crucial in the *Bernal* analysis, are not implicated here.

¶ 17 The Neighbors nonetheless argue that an important consideration in *Bernal* was that the rights-of-way in individual land patents were reserved pursuant to regulations promulgated by the Secretary of the Interior, who directed that roadway use be allowed "without qualification." 196 Ariz. at 365, ¶ 9, 997 P.2d at 1194 (citing 43 C.F.R. § 2731.6–2) (removed 1980). The Neighbors claim that this language supports their contention that the rights-of-way are enforceable regardless of necessity. We disagree. The *Bernal* court relied on this regulation as part of its rationale for rejecting the argument that private parties could not enforce the right-of-way provisions reserved in the federal patents. *Id.* at 365, ¶¶ 8–9, 997 P.2d at 1194. *Bernal*, however, did not address the issue here: whether a right-of-way reserved in the patent for roadway use can be enforced by a private person when a concededly adequate roadway already exists.

¶ 18 Relying on *Stamatis v. Johnson*, 71 Ariz. 134, 224 P.2d 201 (1950), the Neighbors also contend that the Brown right-of-way is an easement in which they have a property right and that they therefore are entitled to use the easement regardless whether they can conveniently access their properties without it. They also argue that,

as holders of the easement, they are entitled to the use of the full easement area unhampered by any obstructions, citing *Squaw Peak Community Covenant Church v. Anozira Development, Inc.,* 149 Ariz. 409, 719 P.2d 295 (App.1986). We disagree. The easement rights conveyed by the federal land patents pursuant to the Act are not unconditional private rights of ingress and egress. Rather, they are circumscribed by their purposes, which, as we previously noted, *supra* ¶ 12, are "to provide street and utility access and to alleviate the burden on local governments to acquire easements to install roads and utilities." *Id.* The clear intent of the reserved right-of-way was to ensure adequate roadway access; it was not to create a right in nearby parcel owners to traverse a neighbor's property regardless of actual need.

¶ 19 Moreover, unlike the easement in *Squaw Peak,* which was precisely fixed in the deed as "40 feet in width," 149 Ariz. at 411, 719 P.2d at 297, the scope of the right-of-way under the Brown patent ambiguously states that it "is subject to a right-of-way *not exceeding* 33–feet in width." (Emphasis added.) Thus, the Neighbors' use of the easement is limited by the general rule that the dominant estate's use of an ambiguous easement is constrained to that which is necessary or reasonable under the circumstances. *Id.* at 412, 719 P.2d at 298 (citing *Aladdin Petroleum Corp. v. Gold Crown Props.,* 221 Kan. 579, 561 P.2d 818, 822 (1977)); *see also Andersen v. Edwards,* 625 P.2d 282, 284–87 (Alaska 1981) (finding ambiguous a reservation of a "100 foot right-of-way along (the) section line" between two parcels dedicated for use as a public highway: "The express language of the dedication suggests that the legislature intended only that the amount of land necessary for use as a public highway be dedicated."); *Barton's Motel, Inc. v. Saymore Trophy Co.,* 113 N.H. 333, 306 A.2d 774, 775 (1973) ("To sustain [a] contention [that an easement grants the right to use any

and all of a strip of land without obstruction,] the plaintiff must point to language in the deed which clearly and definitely fixes the width of the right of way[.]").

¶ 20 *Hyland v. Fonda,* 44 N.J.Super. 180, 129 A.2d 899 (App.Div.1957), is illustrative of the "necessary or reasonable" rule as applied to ambiguous easements. In *Hyland,* a reservation in a deed provided a "right of ingress and egress for roadway purposes along a strip 25 feet in width along the entire northerly boundary." 129 A.2d at 901. Finding the description of the easement ambiguous, the court characterized the 25–foot reference as merely descriptive of the area over which the dominant estate was granted such a way as reasonably necessary for roadway purposes and held that the permissible use of the easement was limited to "no more of the strip than might reasonably be required as a vehicular access and egress" and not "to the absolute use at all times of a roadway actually 25 feet wide." *Id.* at 904. Because the current 9–to 11–foot roadway was deemed sufficient for "convenient roadway access under the circumstances then existing," *id.* at 905, the court reversed the trial court's order granting the owner of the dominant estate a right to increase the width of the roadway to 25 feet, a use which would have required the dismantling of a split rail fence located within the 25–foot easement area, *id.* at 903–05.[2]

¶ 21 Although the circumstances here differ in that the current alignment of Skinner Drive is located entirely within the 33–foot easement reserved in the adjoining parcel owner's property, the principle that the Neighbors should have no greater right to the use of these side-by-side easements than reasonably necessary to access their properties remains the same. As far as the Neighbors are concerned, they have no right to unobstructed passage over the 66–feet width of the combined easements when the existing roadway (regardless of its precise location within the easement area) provides them full

---

2. Our dissenting colleague asserts that any ambiguity should be "resolved strictly against the grantee" because we are construing a federal land grant. *Infra* ¶ 40 (quoting *Kennedy,* 147 Ariz. at 516, 711 P.2d at 655). This rule might apply here if Brown was litigating the scope of

the easement with the government or a utility (as in *Kennedy*). But because the dispute here is between two grantees, we perceive that the legislative intent is better fulfilled by applying the general rule referred to in *Squaw Peak.*

and convenient access to their properties. *See Hunt v. Richardson*, 216 Ariz. 114, 123, ¶ 29, 163 P.3d 1064, 1073 (App.2007) (explaining the right to use land subject to an easement "remains in the owner of the fee so far as such right is consistent with the purpose and character of the easement") (quotation omitted). With Brown's fence in place, both Brown and the Neighbors have access to and can make full use of their respective properties. To require Brown to remove her fence to allow travel over her property would prevent her from making full use of her property but provide no benefit to the Neighbors' property that is not already available using Skinner Drive.

 ¶ 22 Brown has requested an award of attorneys' fees on appeal but has not cited a basis for such an award. We therefore decline her request. *See Country Mut. Ins. Co. v. Fonk*, 198 Ariz. 167, 172, ¶ 25, 7 P.3d 973, 978 (App.2000) (denying request for fees on appeal when prevailing party failed to state any substantive basis for the request). As the prevailing party, Brown will be awarded her costs on appeal contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21(a). *See* A.R.S. § 12–341 (2003).

## CONCLUSION

¶ 23 A private party does not possess an absolute right to use a right-of-way reserved under federal land patents issued pursuant to the Small Tract Act. Instead, such rights-of-way may only be used to the extent the use is consistent with the purposes of the Act. Because the existing roadway provides Neighbors full access to and use of their properties, the Neighbors are not entitled to enforce the right-of-way over Brown's property.[3] Therefore, we reverse the trial court's grant of summary judgment to the Neigh-

bors and remand with directions to enter judgment in favor of Brown on the Neighbors' complaint.

CONCURRING: MAURICE PORTLEY, Judge.

SNOW, Judge, dissenting.

¶ 24 My colleagues in the majority create a new rule governing express easements reserved in federal land patents that changes the settled law. Because I believe the majority's new rule misreads the actual language of the patent, misapplies existing law, fails to serve the purposes of the Small Tract Act, 43 U.S.C. § 682a (repealed 1976) ("STA" or "the Act"),[4] and will work mischief with every tract of land that contains an STA reservation, I dissent.

¶ 25 The property at issue in this appeal is located on what is now East Skinner Drive in Cave Creek east of 56th Street between Dixileta Drive and Dynamite Boulevard. Pursuant to the Act, Brown's property was patented by the federal government to Brown's predecessors in interest in 1959. The patent included the following reservation:

> This patent is subject to a right-of-way not exceeding 33 feet in width, for roadway and public utilities purposes, to be located along the east and south boundaries of said land.

In the parcel to the immediate south of Brown's parcel, the federal government also reserved a similar right-of-way "not exceeding 33 feet" across the parcel's northern boundary. Thus, the two patents together reserved a sixty-six foot right-of-way centered on Brown's southern boundary line. This right-of-way reserved a roadway corridor sufficient to provide multiple lane access that was both sufficient for developing needs and fairly apportioned between the two lots.

---

3. Based on our determination that the Neighbors may not enforce the right-of-way under the circumstances presented here, we do not address Brown's additional argument that the Neighbors have no rights under the patent because Maricopa County has exercised its rights under the right-of-way by creating Skinner Drive.

4. By the time the Act was repealed approximately 450,000 acres in fourteen western states were

classified for small tract purposes. *See* Bureau of Land Mgmt., U.S. Dep't of the Interior, *Instruction Mem. No. 80–540, The Small Tract Act (Act of June 1, as Amended): Guide Book for Managing Existing Small Tract Areas* (1980), cited in Brief of Respondent at 3, *New West Materials, LLC v. Interior Board of Land Appeals*, No. 07–44 (U.S. Nov. 2007). Thus, the effect of the majority's decision could be considerable.

¶ 26 At some point, Brown, on her own initiative, cleared and graded an east-west road that was located entirely on her neighbor's right-of-way. This road and its continuation were eventually named Skinner Drive. At the location in question, Skinner Drive is twenty-five feet wide and provides access for vehicle travel to all properties along the roadway, including those of the Appellees.

¶ 27 Sometime after Brown placed the road on her neighbor's property, Brown obtained a permit from Maricopa County and constructed a fence around the border of her property, which blocked access to the portion of the right-of-way that runs across her property. Her neighbors to the east then brought suit against Brown for impeding the extent of their right-of-way. Brown contends that her neighbors do not need to use the right-of-way that runs across her property due to the existence of Skinner Drive. Therefore, she claims, they have no legal right to use that right-of-way.

¶ 28 Nevertheless, the well-settled law specifies that if an easement created by express grant or reservation "is unambiguous and grants [a party] the right of ingress and egress over the entire . . . width of the easement, the deed governs and considerations of what is reasonable and necessary for ingress and egress are not controlling." *Squaw Peak Cmty. Covenant Church of Phoenix v. Anozira Dev., Inc.,* 149 Ariz. 409, 413, 719 P.2d 295, 299 (App.1986). The rule further specifies that, "the owner of a right-of-way for ingress and egress has a right to use the full width of the area [of the easement] unhampered by obstructions placed thereon." *Id.* at 412, 719 P.2d at 298; *see also* 28A C.J.S. *Easements* § 52 (1996) ("The fact that the easement is not necessary will not bar its creation.").

¶ 29 The majority acknowledges that the reservation in the federal patent at issue is express. It also acknowledges that the scope of an express easement is generally not limited by notions of necessity or reasonableness. Nevertheless, the majority, with no legal precedent or authority whatsoever, ventures to hold the explicit reservation in the federal STA patent ambiguous. It then interprets that purported ambiguity in Brown's favor

and against the beneficiaries of the easement. But it does so, apparently, only when the beneficiary claiming use is a private, as opposed to a governmental, beneficiary.

¶ 30 In so doing, the majority makes at least three errors. First, in order to find ambiguity the majority ignores the plain meaning of the federal regulations governing the STA. Second, when the majority interprets the purported ambiguity in favor of the holder of the servient estate rather than the beneficiary, it ignores the settled Arizona law as it pertains to STA reservations. Third, in ignoring the settled law the majority not only potentially calls into question the scope of every easement in an STA land patent in Arizona, but it also makes a hopeless muddle of the right to use such an easement based not on the text of the express reservations, but on the identity of the beneficiary. This is not good public policy.

¶ 31 As the majority acknowledges, the STA was passed to authorize the transfer of property from the federal government to private users "for residence, recreation, business or community site purposes." *See Mountain States Tel. & Tel. Co. v. Kennedy,* 147 Ariz. 514, 516, 711 P.2d 653, 655 (App. 1985) *(Kennedy II).* It was necessary, in dividing up the federal land into separate parcels, to provide rights-of-way necessary to access the separately-patented parcels that had previously been held in a single parcel by the federal government. The rights-of-way were necessary to the users of such property whether or not a public entity decided to construct or maintain roads over the rights-of-way.

¶ 32 Patents under the Act thus reserved an easement sufficient to provide multiple lane access regardless of whether the size of the easement granted would be consistently used while the property developed. *See City of Phoenix v. Kennedy,* 138 Ariz. 406, 408, 675 P.2d 293, 295 (App.1983) *(Kennedy I); see also Bernal v. Loeks,* 196 Ariz. 363, 366, ¶ 10, 997 P.2d 1192, 1195 (App.2000) ("It is only when the parcels are used . . . that the government is justified in expending the time and resources needed to build such roadways."). Such roadways did not need to be

public roadways to be authorized by the reserved easement:

> Although utilities almost invariably are installed and maintained by public entities, this is obviously not true for roadways, especially those that are forged in rural newly developing areas. That the [regulations pertaining to STA easements] did not modify the phrase "street and road purposes" with the word "public," therefore, evinces a clear intent that such roadways are not limited to those that are publicly built and maintained.

*Bernal*, 196 Ariz. at 365, ¶ 9, 997 P.2d at 1194.

¶ 33 Further, by providing for easements of some size the Act reduced "the heavy burden on local governments of subsequently having to acquire an easement" for roadways and utilities as the need for access to these properties expanded. *Kennedy I*, 138 Ariz. at 408, 675 P.2d at 295. Because the easements were express easements, the easements were neither extinguished nor limited merely because the entire extent of the easement reserved was not immediately necessary to grant effective access.

¶ 34 If, from the time the patent was granted, a property owner wanted to use the right-of-way on property otherwise belonging to her neighbor, the right-of-way gives the property owner an express, unlimited right to use the easement for a roadway within the scope of the easement. It does so whether or not a local government chooses to build a road over the property and whether or not the property owner "needs" all of the easement used.

¶ 35 Indeed, Brown herself exercised this right to use the easement on her neighbor's property when she initially graded what became Skinner Drive on the right-of-way running over her neighbor's property rather than her own. She hardly had a "need" to use her neighbor's property in light of the easement running across her own. But her lack of need did not prevent her from doing so.

¶ 36 She was authorized to do so by the language in her neighbor's patent, which is identical to the reservation in her own, and gives her neighbors similar rights across her property. The language in Brown's patent reserving a right-of-way "not exceeding 33 feet" on the south and east boundaries of her property is plainly explained by the federal regulations implementing the STA. Those regulations specified that, unless otherwise explicitly stated, the right-of-way reservation under patents issued pursuant to the STA would be for fifty feet:

> The classification order may provide for rights-of-way over each tract for street and road purposes and for public utilities. If the classification order does not so provide, the right-of-way will be 50 feet along the boundaries of the tract.

43 C.F.R. § 2731.6–2 (removed 1980). Thus, because the Secretary intended for the reservation from Brown's property to be for less than fifty feet, he specified in the patent that the reservation would not exceed thirty-three feet. The only thing the Secretary did, by so doing, was limit the size of the easement to thirty-three feet rather than fifty feet. Otherwise, as we have concluded in similar cases, the above subsection from the federal regulations "allows for roadway use without qualification." *Bernal*, 196 Ariz. at 365, ¶ 9, 997 P.2d at 1194.

¶ 37 Now, however, the majority imposes a qualification on the use of a private roadway. It does so by asserting that an express easement for "access" does not mean what it says, but, as it applies to private users, grants an easement over only that part of the easement necessary to obtain reasonable access. The majority then holds that because plaintiffs can achieve access purely by passing over that part of the easement that passes to the south of Brown's property, they cannot use their express easement as it passes over Brown's property. Such a holding is directly contrary to the law of easements as laid out in *Squaw Peak*, 149 Ariz. at 413, 719 P.2d at 299, and *Hunt v. Richardson*, 216 Ariz. 114, 123, ¶ 29, 163 P.3d 1064, 1073 (App.2007) (holding that as it applies to an express easement, "what is 'necessary' is merely ... what is 'appropriate' "). Use of a roadway corridor for access is plainly an "appropriate" use of an easement reserved "for roadway [ ] purposes." That the Act

was intended to allow "effective" use of public lands does not mean that neighboring parties may enforce the entire right of way *only* if their lots would otherwise not be utilized effectively, and the majority produces nothing to suggest that the "access" envisioned by the Secretary was access circumscribed by "need." Such a construction is unworkable and frustrates the broad purposes of the Act in providing rights-of-way in the first place.

¶ 38 The sole case on which the majority relies to impose some sort of an implied need requirement is from the appellate division of the New Jersey superior court. *See Hyland v. Fonda,* 44 N.J.Super. 180, 129 A.2d 899 (App.Div.1957). That case has nothing to do with the STA and does not involve similar language. Rather, it held that a reservation "along a strip 25 feet in width" was ambiguous because it was unclear whether the 25-foot strip referred to the easement itself or to the land on which the easement was located. *Id.* at 904. By contrast, there is no possible double-meaning here—the easement covers the thirty-three feet along the southern and eastern boundary lines. The majority thus errs when it limits the size of this express easement by determining that it is not necessary to provide access to the plaintiffs.

¶ 39 Even assuming that there was an ambiguity in the STA patent, our cases clearly hold that such an ambiguity is construed in favor of the beneficiaries of the easement rather than in favor of the holder of the servient estate. In *Kennedy II,* the owner of the servient estate, Kennedy, asserted that Mountain States had no right to lay telephone cable in the thirty-three feet along his northern boundary pursuant to a thirty-three foot reservation in the STA patent by which he held his property. 147 Ariz. at 515–16, 711 P.2d at 654–55. The language of the reservation in Kennedy's patent was identical in many respects to the reservation here, but it also had some important distinctions. *Id.* at 515, 711 P.2d at 654. Instead of plainly specifying that the thirty-three foot easement would be along the east and south boundaries of the land as the easement does here, the reservation in Kennedy's patent specified

that a thirty-three foot easement would be "located across said land or as near as practicable to the exterior boundaries." *Id.* Kennedy noted that pursuant to that single reservation, Phoenix had taken a thirty-three foot easement across his western boundary in 1974 and his southern boundary in 1979. *Id.* Mountain States had taken an easement across the northern boundary in 1976. *Id.* Kennedy argued that the reservation was ambiguous and thus insufficient to grant multiple rights of way across his entire property at three of the four exterior boundaries. *Id.* at 516, 711 P.2d at 655. We disagreed. *See id.*

¶ 40 In deciding in Mountain States' favor, we noted that "where the language of a public land grant is subject to reasonable doubt such ambiguities are to be resolved strictly against the grantee and in favor of the government." *Id.* After stating the policy behind such reasoning, we acknowledged that Mountain States was not the U.S. government, but was nevertheless the sort of beneficiary for which the U.S. government had reserved the right-of-way. *Id.* We thus held that the rule construing ambiguities strictly against the grantee also applies "when the federal government reserves an interest in land for entities not party to the grant." *Id.* Applying that rule, we held the reservation was sufficient to reserve an easement along the northern as well as the western and southern boundaries of Kennedy's property. *Id.* at 517, 711 P.2d at 656. We thus held that Mountain States' "placement of telephone cable within the specified 33 feet of the boundary was lawful." *Id.* If such a rule of construction gave Mountain States an entirely new thirty-three foot easement across the servient estate, then it is certainly sufficient to grant a thirty-three foot easement here, where the reservation is express.

¶ 41 Mountain States' placement of the cable along the northern boundary was not strictly necessary when there was already an existing easement along the southern boundary. But noting that the purpose of the reserved STA easements was to enhance the value of the granted land for "residence, recreation, business or community site purposes," we determined that "[t]he purpose of the rights-of-way could best be fulfilled by permitting access along all boundaries." *Id.*

at 516, 711 P.2d at 655. Nor, of course, did Mountain States need to use the entire thirty-three feet in which to place its cable. Nevertheless, we specified that cable placement anywhere within the thirty-three feet of the boundary of the easement was lawful. *Id.* at 517, 711 P.2d at 656. Thus, *Kennedy II* dispels any argument that necessity for an STA easement is a requirement for its existence.

¶ 42 The majority, and even the Appellant, also concedes that *Bernal* stands for the proposition that rights-of-way reserved in STA patents exist for the benefit of the private owners of neighboring property.[5] In fact, the express patent here reserves an easement for "roadway and public utility purposes." With the exception of utilities, there is nothing in the text of the reservation that suggests that the scope of the right to use the easement for a roadway is different as between public and private users. *Bernal* confirms as much. *See* 196 Ariz. at 365, ¶ 9, 997 P.2d at 1194 (holding that STA regulations clearly demonstrate that these easements also exist for the benefit of private roadways).

¶ 43 The majority's holding also presents potentially serious public policy ramifications for any property subject to an STA patent reservation. The majority has just declared that every STA patent reserving an easement "not exceeding 33 feet"—language used in every reported case involving STA easements in this state—is ambiguous. Thus, despite the reasons for which the easement was reserved, it can be used, at least by private parties, only when that party can satisfy a court that it demonstrably needs to use the whole scope of the easement to achieve access. The majority offers nothing in the text of the patent reservation itself that would justify such a limitation. Nor does it offer any justification for treating the

user of a private roadway different than the user of a public roadway. Nor does the majority consider how its approach might affect future use of and need for the easement on Brown's property.

¶ 44 Finally, it is good public policy to avoid constant resort to the courts to determine what qualifies as necessary, and thus to what extent an easement may be used. That is presumably why express easements are not bound by a "need" limitation unless that limitation is explicitly written into the reservation or otherwise evident from its purposes. There is no such restrictive language or purpose here.

¶ 45 To the extent that the federal government reserved an easement for the government and private users, the majority has now unilaterally declared that reservation null and void, except in cases of "need." Such a pronouncement is unwarranted and ill-advised. The superior court's summary judgment was correct and should have been affirmed by this court. Therefore, I respectfully dissent.

---

5. The majority limits *Bernal,* however, by asserting that Bernal's property was "landlocked" and thus that Bernal needed the easement to gain access to his property. *Supra* ¶¶ 1, 14. With all due respect to the majority, Bernal did not "need" the easement to access his property. A road ran the entire length of Bernal's eastern boundary, which, in the words of the court, "provide[d] *access* to his property." *Bernal,* 196 Ariz. at 363, ¶ 2, 997 P.2d at 1192 (emphasis added). While an arroyo did pass through Bernal's prop-

erty, it was spanned by a footbridge and thus the entirety of the lot was accessible. *Id.* Bernal's only claim approaching "need" was his assertion that "he would like to keep horses on the west section," to which he did not *"readily"* have access given the arroyo. *Id.* (emphasis added). While Bernal may not have had *easy* access to *every* part of his land for *any* potential purpose, that is far indeed from saying that Bernal was in "need" of the right-of-way.