*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID McCARREY and DONNA McCARREY, | ) ) ) | Supreme Court No. S-14114 |
| Appellants, | ) ) | Superior Court No. 3AN-10-07799 CI |
| v. | ) ) | O P I N I O N |
| RONALD KAYLOR and JEAN K. KAYLOR, | ) ) ) | No. 6767 – March 29, 2013 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Brent R. Cole, Law Offices of Marston & Cole, P.C., Anchorage, for Appellants. Calvin R. Jones, Jones & Colver, LLC, Anchorage, for Appellees.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

CARPENETI, Chief Justice.

## I. INTRODUCTION

Two couples own adjoining lots in Anchorage, located directly north and south of each other. Title to the southern lot originated from a federal land patent, which reserved a right-of-way across the northern boundary of the lot. A road currently runs through the right-of-way. The owners of this lot proposed building a fence with a locked

gate on the north side of the road, along the northern boundary of their lot; the fence would have impeded access to a cleared area on the northern neighbors' lot that the neighbors use for parking and storage. The northern neighbors obtained a permanent injunction preventing this limitation on access to the southern part of their lot. The southern neighbors appeal, arguing that the superior court denied them due process or, alternatively, erred in finding that their lot is subject to a public right-of-way. Because the superior court made no findings whether the federal land patent's right-of-way offer of a common law dedication was accepted, we remand to the superior court to determine whether there has been acceptance of the offer of dedication.

## II. FACTS AND PROCEEDINGS

David and Donna McCarrey own a house and property (lot 14) on East 136th Avenue in South Anchorage. Ronald and Jean Kaylor own a house and lot on East 135th Avenue, directly north of the McCarreys. The McCarreys' deed shows that the land is subject to a 50-foot right-of-way "for roadway and public utilities" across the north boundary of the lot. East 136th Avenue currently runs through this right-of-way. The lots are located north of DeArmoun Road between Elmore Road and Davis Road.

The Kaylors have lived in their house since early 1988. According to the Municipality of Anchorage's tax records, their house was built in 1981. An aerial photo from 1980 shows a dirt road in the right-of-way from Davis Road going west to approximately lot 15, the lot to the west of the McCarreys' lot. At some point, the Kaylors began to use an area on the southern boundary of their lot for storing a boat, two motor homes, and a mobile greenhouse, and for parking.[1] In addition, the Kaylors have

---

[1]     When this use began was disputed: According to the Kaylors, they have used East 136th Avenue and this area for at least 15 years; the McCarreys contended that the Kaylors only began storing vehicles in the cleared area in 2005. An aerial

(continued...)

a tenant who uses the area to park her car; the tenant is elderly and reportedly would have difficulty accessing her apartment from the north side of the house.

The McCarreys' home was built in 2003, and they bought it in December 2009. On May 21, 2010, the McCarreys' attorney informed the Kaylors that the McCarreys were going to build "a six foot residential grade chain link fence on the northern boundary of [the McCarreys'] property beginning on or about Monday, May 24, 2010." The proposed fence, on the Kaylors' property line between their property and the road, would have blocked the Kaylors' access to East 136th Avenue. He also told the Kaylors that the McCarreys planned to install a gate in the fence; if the Kaylors wished to use the gate, they needed to give the McCarreys 72-hour notice.

The Kaylors filed suit to establish a prescriptive easement in the right-of-way and obtain an injunction preventing the McCarreys from building the fence. After the parties unsuccessfully tried to settle the case, the court set an injunction hearing for early August.

On July 8, the Kaylors filed the affidavit of Daniel Bolles, a consultant in zoning and land-use issues. Bolles had worked for the Municipality of Anchorage for about 30 years in various positions, including surveying, construction, and code enforcement. In his affidavit Bolles indicated that the original patent from which title for the McCarreys' lot derived "established a public roadway easement." He also stated that the easement was "now being used as East 136th Avenue." The day before the hearing, the Kaylors filed a memorandum of law discussing two issues: whether the McCarreys' proposed fence would interfere with a public right-of-way and whether the Kaylors had

---

[1](...continued)
photograph from 1995 shows a cleared area on the southern boundary of the Kaylors' lot.

a prescriptive easement. The McCarreys did not file a response or object to the Kaylors' filings.

Superior Court Judge John Suddock held an injunction hearing on August 5. The court heard testimony from Bolles and Robert Stevens, a friend of the Kaylors who had visited them often and done remodeling work on their residence.

Bolles testified about the origin of the right-of-way on the McCarreys' lot. According to Bolles, the lots in the area "were set up as the Rabbit Creek Small Tracts" and "each parcel receiv[ed] patent at the time of sale." Typically each patent had a right-of-way, which in some cases later became "more formal paved roads." Bolles identified photographs he had taken near the Kaylors' and McCarreys' lots, including pictures of municipal signs at the intersections of East 136th Avenue and Davis Road, and East 136th Avenue and Elmore Road. Based on the Municipality's grid map, Bolles testified that the map "identifie[d] the . . . right-of-way and its width and location so that at such time that the neighborhood wishes to pave it, then the municipality has boundaries in which . . . to govern . . . [the] work that's going to go on there."

Discussing aerial photographs the McCarreys had obtained, Bolles identified a "trail system" existing at earlier times in the area. For example, he testified that in the 1985 photo Elmore Road was "not built" as a through street then, and neither was East 136th Avenue, but he said that "it's obvious . . . that there's a trail through [the rights-of-way on parcels 20-16] and somebody's driving through there." Bolles testified that East 136th Avenue was built from Davis Road to lot 15 by 1980 and was extended to Elmore Road in the early 2000s. He testified that at the time East 136th was extended to Elmore Road, the Municipality and the property owners of the affected lots "upgraded . . . the trail that was . . . in the 50 foot easement down to lot 17"; he agreed that the extension of East 136th "simply recognized the right-of-way . . . that existed before." Bolles said that East 136th had not, as of the time of the hearing, "been developed to

municipal standards." He testified that there was no restriction in the patent limiting who could use the right-of-way and that, in his opinion, the owners of the lots lying between East 135th and East 136th could ask for a driveway permit for access to East 136th. He indicated that the Kaylors "have what was identified under municipal code as a through lot," which he described as "a lot other than a corner lot in which you have frontage to two streets."

Stevens testified that he had done several building and remodeling projects on the Kaylor home and had also visited the home many times on social visits. He testified that at least starting in the mid-1990s many people used the cleared area for parking when they visited the Kaylors. He said at the hearing that he had built a deck for Jean Kaylor 18 years before, and at that time lumber trucks accessed the Kaylor property from the south to bring in the materials for the job. According to Stevens, the road to access the southern portion of the Kaylors' lot at that time was dirt but "pretty easy to drive down." Stevens indicated that he accessed the Kaylors' lot from both East 135th Avenue and East 136th Avenue. He also said that the apartment the Kaylors rented out was in the back of the house and the Kaylors had rented it out since the early 1990s.

After Stevens testified, the court asked the parties to clarify the factual dispute. The court thought the dispute was about interpretation of the patent and whether the Kaylors "ha[d] unlimited access from 136th onto [their] lot or can that [access] be entirely or partially blocked by Mr. and Ms. McCarrey." The court did not think there was a factual dispute in the case "if you set aside the prescriptive easement issue."

The McCarreys agreed with the court that the question whether "the right-of-way benefit[ted] only the McCarrey parcel and not the Kaylor parcel" was "a pure legal question." The Kaylors initially argued that the "intent" or purpose of the right-of-

way was a disputed factual issue, but the court considered it a legal question.  The superior court then found as a matter of law:

> [T]here [was] a 1961 devolution of property from the United States to a series of landowners that retained along the north side of lots 13 to 20, including lot 14 which is the McCarrey property, a 50 foot right-of-way for a road.  By history there's been on the stretch that runs between — from Davis Street past [the] McCarrey/Kaylor lots, there's been a road there for a long time and then more recently with the upgrade . . . of Elmore Road in the early 2000s, . . . East 136th . . . is punched all the way through, running east/west from Elmore all the way to Davis.  It's recognized on municipal plats as a roadway, they term it 136th Avenue, it's in logical sequence with 135th and 137th.  It's signed by the Municipality at both ends.  It's open to public access.  Any[one] present in the courtroom or any[one] present in Anchorage or [a] tourist or an Afghani could legally drive from Elmore to Davis, it's a road.  It's a road consistent with the 1961 deed conveying the McCarrey property from the United States to somebody else.

The court refused to interpret the right-of-way as benefitting only the McCarrey property; it found that the right-of-way was "there to benefit the world."  It noted that "there's nothing in the wording of the . . . right of way grant that suggests that the McCarreys can turn off of . . . 136th Avenue at point A, B, C, ad infinitum, of their property, but that a different condition applies on the north side of the right-of-way."  The court stated:

> The wording i[n] this patent is subject to a right-of-way.  A right-of-way in common parlance is an area in which a group of people or a political entity can do some specified thing.  It's delimited as 50 feet in [width] and its purpose is both for public utility purposes and for a roadway to be located along the north boundary of the land.

The court suggested that the McCarreys could ask the Municipality for permission to build the planned fence, but the court considered that a zoning issue and beyond its

-6-                                                                 6767

power to decide.  It found as a matter of law that "the Kaylors are entitled to an injunction preventing the McCarreys from limiting their access to their property by a gated fence."  The court later entered a written injunction prohibiting the McCarreys from interfering with the Kaylors' use of the easement.  The McCarreys appeal.

## III.   STANDARD OF REVIEW

Whether the superior court violated a party's due process rights is a question of law, which we review de novo.[2]

Interpretation of a statute is a question of law that we review de novo, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

We have adopted a three-step analysis for interpretation of deeds.[4]  "The proper first step in deed construction is to look at the four corners of the document to see if it unambiguously presents the parties' intent."[5]  "Whether a deed is ambiguous is a question of law."[6]  If a deed is ambiguous, the next step is to consider "the facts and

---

[2]   *A.M. v. State*, 945 P.2d 296, 302 (Alaska 1997) (citing *DeVaney v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. DeVaney*, 928 P.2d 1198, 1200 (Alaska 1996)).

[3]   *Pastos v. State*, 194 P.3d 387, 391 (Alaska 2008) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1970)) (internal quotation marks and alterations omitted).

[4]   *Estate of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009) (quoting *Ashley v. Baker*, 867 P.2d 792, 794 (Alaska 1994)).

[5]   *Id.* (quoting *Norken Corp. v. McGahan*, 823 P.2d 622, 626 (Alaska 1991)) (internal quotation marks and punctuation omitted).

[6]   *Id.* (quoting *Norken*, 823 P.2d at 626).

circumstances surrounding the conveyance" to discern the parties' intent.[7] In the event that the parties' intent cannot be determined, we rely on rules of construction.[8]

Ambiguities in public land grants are "resolved strictly against the grantee and in favor of the government."[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Violate The McCarreys' Due Process Rights.

The McCarreys argue that the superior court violated their due process rights because they did not have adequate notice before the injunction hearing that the court would consider whether East 136th Avenue was a public road. The McCarreys point out that the Kaylors alleged in their complaint only that the Kaylors had a prescriptive easement across the McCarrey property but failed to allege that the McCarrey property was subject to a public right-of-way or that the right-of-way established a public road, yet the superior court ruled as a matter of law that East 136th Avenue was a public roadway. The Kaylors respond that under Alaska Rule of Civil Procedure 15, issues not raised in the pleadings can nonetheless be tried by the consent of the parties. The Kaylors maintain that the court acted properly because the McCarreys did not object at the hearing to any testimony about a public roadway. Additionally, they argue that the elements for establishing a public prescriptive easement are similar to those for establishing a private prescriptive easement, so there was adequate notice of the issues to be tried.

---

[7] *Id.* (quoting *Norken*, 823 P.2d at 626).

[8] *Id.*

[9] *State, Dep't of Highways v. Green*, 586 P.2d 595, 603 n.24 (Alaska 1978).

The McCarreys' contention that the superior court denied them due process has no merit. They admit in their reply brief before us that at the hearing they "disputed that East 136th Avenue [was] a legally designated public road." Moreover, the McCarreys argued to the trial court that the Municipality of Anchorage "determine[d] whether or not something is a road or a street," and their position was that the Municipality "ha[d] not dedicated this as a road." They also argued at the hearing that the Municipality did not plow or maintain the right-of-way, so it could not be considered a road and agreed with the superior court that the question whether the right-of-way benefitted properties that abutted it was a legal issue, not a factual one. The McCarreys' arguments at the hearing show that they consented to the court considering the establishment of a public road.

In addition, the Kaylors raised the question whether East 136th Avenue was a public road in pleadings they filed before the hearing. Their complaint alleged that the McCarreys' lot was "encumbered by a road easement" and that "[a] dirt road . . . is located on the northern area[] of . . . the defendants' Lot 14." Bolles's July affidavit described the right-of-way as "a public roadway easement" and said that the easement was "now being used as East 136th Avenue." The affidavit further stated that the right-of-way was "shown as a public easement" on municipal grid maps and "grant[ed] public access to the lots north and south of the 50 foot easement." All of this demonstrates that the McCarreys had actual notice before the hearing that the court would consider whether a public roadway occupied the right-of-way on their property.

B.    **The Federal Land Policy And Management Act Did Not Terminate The Right-Of-Way.**

Before us the McCarreys argue that the Kaylors "were required to establish actual use of the right-of-way as a road prior to 1976." The McCarreys note that the patent to their land, and the right-of-way reserved therein, was issued pursuant to the

Small Tract Act,[10] which was repealed by the Federal Land Policy and Management Act of 1976 (FLPMA).[11] Citing an instruction memorandum from the United States Department of the Interior, Bureau of Land Management (BLM)[12] and a Nevada state trial court decision[13] the McCarreys argue that the right-of-way on their land was a common law public right-of-way dedication that would terminate with the 1976 repeal of the Small Tract Act unless it had been accepted through actual use prior to that year. The Kaylors agree with the McCarreys that "the roadway provisions of the [Small Tract Act] were inapplicable" because of its 1976 repeal. The Kaylors nonetheless ask us to affirm the superior court on the theory that they established the existence of a public road through prescriptive use. Because the superior court specifically stated it was construing the deed as a matter of law and did not make factual findings on the elements necessary to establish a prescriptive easement,[14] we decline to affirm the superior court on the prescriptive use theory.

We next consider the parties' views that repeal of the Small Tract Act terminated or otherwise affected the right-of-way at issue here. We have previously held

---

[10]     Acts of June 1, 1938, ch. 317, § 1, 52 Stat. 609; July 14, 1945, ch. 298, 59 Stat. 467; June 8, 1954, ch. 270, 68 Stat. 239 (codified at 43 U.S.C. § 682a) (repealed 1976).

[11]     Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 702, 90 Stat. 2743, 2787 (1976).

[12]     BUREAU OF LAND MGMT., INSTRUCTION MEMORANDUM NO. 91-196 (Feb. 25, 1991) (hereinafter IM 91-196).

[13]     *Spittler v. Routsis*, No. CV08-02467, 2010 WL 2717701 (Nev. Dist. Ct. Apr. 21, 2010), *pending appeal* in Nevada Supreme Court (case No. 56681), *available at* caseinfo.nvsupremecourt.us/public/caseView.do?CSIID=24810.

[14]     *See Swift v. Kniffen*, 706 P.2d 296, 302 (Alaska 1985) (listing the elements required to succeed on a prescriptive easement claim).

that "stipulations as to the law are not binding upon the court," particularly when they "involve[] a matter of public policy."[15] The legal issue of FLPMA's effect on the right-of-way provisions in small tract patents is not limited to the dispute between the parties here; indeed, the question whether FLPMA terminated these rights-of-way potentially affects many people who are not parties to this case,[16] including the Municipality of Anchorage.[17] Determining what effect the repeal of the Small Tract Act had on the right-of-way is a legal question to which we apply our independent judgment.[18]

The Small Tract Act "authorized the sale of public lands classified as 'valuable for residence, recreation, business or community site purposes.' "[19] It was made applicable to Alaska in 1945.[20] In 1961, pursuant to the Small Tract Act, the federal government issued a patent to the McCarreys' predecessor in interest. The lot appears to have been part of Small Tract Classification Order No. 97, also identified as

---

[15]     *Dresser Indus., Inc. v. Alaska Dep't of Labor*, 633 P.2d 998, 1004 (Alaska 1981).

[16]     *See Neal v. Brown*, 191 P.3d 1030, 1036 n.4 (Ariz. App. 2008) (Snow, J. dissenting) (noting "considerable" effect of majority's decision about small tract rights-of-way because of widespread classifications of small tracts).

[17]     The grid map from the Municipality in the record shows a number of streets in the area with the designation "patent roadway reserve."

[18]     *See Johnson v. Johnson*, 239 P.3d 393, 407 (Alaska 2010) (citing *Cooper v. Cooper*, 144 P.3d 451, 454 (Alaska 2006)) (noting that independent judgment standard of review would apply if question involved interpretation of federal statutes).

[19]     *Mountain States Tel. & Tel. Co. v. Kennedy*, 711 P.2d 653, 655 (Ariz. App. 1985) (quoting 43 U.S.C. § 682a).

[20]     *State, Dep't of Highways v. Crosby*, 410 P.2d 724, 727 (Alaska 1966).

Rabbit Creek Additional Unit No. 1.[21] The patent was issued "subject to a right-of-way not exceeding 50 feet in width, for roadway and public utilities purposes, to be located along the north boundary of said land."[22]

The McCarreys argue that the date of repeal of the Small Tract Act was the date by which the Kaylors had to show that the right-of-way was used as a road.[23] The McCarreys rely on the BLM's Instruction Memorandum No. 91-196 (IM 91-196), dated February 25, 1991.[24] According to IM 91-196, "small tract rights-of-way [were] common law dedications to the public to provide ingress and egress to the lessees or patentees and to provide access for utility services."[25] The memorandum also provided:

---

[21] Notices, Alaska, Small Tract Classification Order No. 97, 20 Fed. Reg. 2871, 2871-72 (Apr. 28, 1955).

[22] The classification order specified the location of rights-of-way on the lots offered for lease and referred to the rights-of-way as easements. *Id.* at 2872.

[23] This issue was not specifically raised before the superior court, although the McCarreys implied that public roads had to be owned by the Municipality and contended that the Municipality had not "dedicated" East 136th Avenue as a road.

[24] According to the BLM website, instruction memoranda "are temporary directives that supplement the Bureau Manual Sections" and either "contain new policy or procedures that must reach BLM employees quickly," "interpret existing policies," or "provide one-time instructions." U.S. Dept. of the Interior, Bureau of Land Management, National Instruction Memoranda, available at http://www.blm.gov. (last visited July 31, 2012). Instruction memoranda are not regulations, so they are entitled only to limited deference under federal administrative law — that is, we defer to the interpretation in them only "to the extent that it is persuasive." *Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1165 & n.48 (Alaska 2009); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (noting that agency interpretations of statutes that are not in regulations are entitled only to limited deference).

[25] IM 91-196, *supra* note 12, at 1.

-12- 6767

The right-of-way remained available as long as the lands were classified for small tract use. These rights-of-way were determined to be common law dedications and had the effect of a public easement. However, until *acceptance by use* of the easement made the dedication complete, the United States could revoke or modify the offer to dedicate in whole or in part. Said another way, unless the common law rights-of-way were actually used for a road or public utilities to serve a small tract, the dedication disappeared *with the termination of the classification.*[26]

The McCarreys infer that repeal of the Small Tract Act terminated all small tract classifications and, as a result, if the right-of-way had not been used as a roadway before repeal of the Small Tract Act, the right-of-way "disappeared."

But IM 91-196 does not discuss how a small tract classification is terminated. And the language of FLPMA, BLM regulations and notices, and a BLM instruction memorandum from 1980 all indicate that FLPMA did not automatically terminate Small Tract Act classifications existing at the time of repeal. Section 102(a)(3) of FLPMA, codified at 43 U.S.C. § 1701(a)(3), directs *review* of "existing classifications of public land that were effected by executive action or statute before October 21, 1976." BLM's current regulations indicate that lands segregated under the Small Tract Act remain segregated,[27] and BLM has published notices terminating Small Tract Act classifications after 1976.[28] Finally, in *The Small Tract Act: Guide Book for Managing*

_____

[26]    *Id.* at 2 (first emphasis in original) (second emphasis added).

[27]    43 C.F.R. § 2091.7-1(a)(1) (2010) ("Lands classified under the authority of . . . the Small Tract Act (43 U.S.C. § 682a) are segregated from the operation of public land laws including the mining laws . . . except as provided in the notice of realty action.").

[28]    *See, e.g.*, Realty Action; Termination of Classification and Opening Order: (continued...)

*Existing Small Tract Areas*, Instruction Memorandum No. 80-540, the BLM noted that "[t]he classification and accompanying segregation[]continue until revoked, even though the [Small Tract Act] has been repealed."[29] We thus conclude that repeal of the Small Tract Act did not by itself end a small tract classification.

In any event, it is unlikely that FLPMA had any effect on the right-of-way at issue here because FLPMA applies to public, not private, lands.[30] "Public lands" are lands "owned by the United States within the several States."[31] The McCarreys' lot was not public land in 1976 — it passed out of federal ownership in 1961. According to the BLM's regulations, issuance of a patent ends the segregative effect of a classification order as to the land in the patent.[32] In addition, even in IM 91-196 the BLM states:

> Upon issuance of a small tract patent, the Secretary is
> deprived of all rights to the lands except those specifically

---

[28](...continued)
Alaska, 67 Fed. Reg. 8310, 8310 (Feb. 22, 2002); *see also* Termination of Classification of Public Land for Small Tract Classification Number 368, and Opening Order; California, 63 Fed. Reg. 48,753, 48,753-54 (Sept. 11, 1998); Termination of Classifications of Public Lands for Small Tract Classification Numbers 236, 243, and 388, and Opening Order; California, 63 Fed. Reg. 10,036, 10,036-37 (Feb. 27, 1998).

[29] BUREAU OF LAND MGMT., THE SMALL TRACT ACT: GUIDE BOOK FOR MANAGING EXISTING SMALL TRACT AREAS 1-46 (1980) (hereinafter GUIDE BOOK).

[30] *See* 43 U.S.C. § 1701; *Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585, 601-02 (9th Cir. 1981) (holding that lands in which U.S. had retained mineral rights were not "public lands" under FLPMA); *United States v. City & Cnty. of San Francisco*, 446 F.Supp.2d 1140, 1143-44 (E.D. Cal. 2006) (holding that certain provisions of FLPMA regulate only public, not private, lands).

[31] 43 U.S.C. § 1702(e) (2006).

[32] 43 C.F.R. § 2091.2-2(a)(3) (2010) ("The segregative effect of a Notice of Realty Action automatically terminates . . . [u]pon issuance of a patent or other document of conveyance.").

reserved to the United States. Under a common law dedication, fee title lies with the owner of the land subject to the easement of the public for the use of the land. The government transfers all its interest in and jurisdiction over the lands as completely as if the patent had been made subject to a right-of-way in favor of a named holder of such right-of-way. The government has no legal power, except under eminent domain proceedings . . . to eliminate this restriction from the patent.[33]

We therefore hold that repeal of the Small Tract Act in 1976 did not terminate or revoke the right-of-way at issue here.

### C. The Right-Of-Way Grant Created An Offer Of Dedication For A Public Roadway.

We next consider the nature of the interest created by the federal patent. This requires interpreting the language of the patent, or deed, issued to the McCarreys' predecessor in interest. The first step in deed interpretation is deciding whether the deed is ambiguous.[34] The patent was issued subject to a right-of-way not to exceed 50 feet in width for roadway and public utilities purposes, so the size and purpose of the right-of-way are not ambiguous. But the parties disagree about the nature of the right-of-way. The McCarreys contend that the right-of-way is a common law dedication, although they suggest that the right-of-way created a private road that was intended to benefit only owners of federally-issued small tracts. The Kaylors argue that the superior court correctly held that the right-of-way in fact contains a public road.

---

[33] IM 91-196, *supra* note 12, at 3.

[34] *Estate of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009) (citing *Norken Corp. v. McGahan*, 823 P.2d 622, 626 (Alaska 1991)) ("Whether a deed is ambiguous is a question of law.").

A dedication is "[t]he donation of land or creation of an easement *for public use*."[35] Dedications can be either express or implied.[36] Express dedications can be statutory or common law.[37] "A common law dedication occurs 'when the owner of an interest in land transfers to the public a privilege of use of such interest for a public purpose.' "[38] "There are two essential elements of a common law dedication: (1) an owner's offer of dedication to the public and (2) acceptance by the public."[39] Whether there has been a common law dedication is usually a factual issue related to the intent of the dedication.[40] But in this case both parties agreed in the superior court that the government's intent was a legal issue. The Kaylors initially told the court that there was a factual issue about intent, but they later agreed with the court that intent could be derived by interpreting the patent. We too agree that the government's intent in creating the right-of-way is a legal question because the patent was issued by the federal government pursuant to a statutory and regulatory scheme; the government's intent can be derived from the wording of the patent as well as interpretation of statutes and regulations.[41]

---

[35]     BLACK'S LAW DICTIONARY 473 (9th ed. 2009) (emphasis added).

[36]     JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENCES IN LAND § 3:10 (2011).

[37]     *Id.*

[38]     *Swift v. Kniffen*, 706 P.2d 296, 300 (Alaska 1985) (quoting *Hamerly v. Denton*, 359 P.2d 121, 125 (Alaska 1961)).

[39]     *Id.* at 301 (citations omitted).

[40]     *Id.*

[41]     *Cf. State, Dep't of Highways v. Green*, 586 P.2d 595, 602-03 (Alaska 1978) (continued...)

Nothing in the patent's language suggests that the government intended to limit use of roads created in the rights-of-way to small tract owners. The patent did not identify a dominant estate or limit access only to small tract owners.[42] The patent reserved the right-of-way for a roadway and public utilities. The instruction memorandum on which the McCarreys rely states, "[I]t is generally accepted that small tract rights-of-way are common law dedications *to the public* to provide ingress and egress to the lessees or patentees and to provide access for utility services."[43] We previously identified the purpose of Small Tract Act rights-of-way as "provid[ing] rights-of-way for 'access streets or roads' and for public utilities."[44] We noted that the regulatory language authorizing the rights-of-way "suggest[ed] the Secretary's concern with reserving access for other lots within the boundaries of the small tract lease area."[45] We agree with the Arizona Court of Appeals that the rights-of-way in small tracts were intended "to avoid imposing the heavy burden on local governments of subsequently having to acquire an easement when the time came to install utilities and roadways."[46]

The BLM has consistently considered small tract rights-of-way to be common law dedications to the public. As early as 1957, the Solicitor General's Office

---

[41](...continued)
(interpreting patent as legal issue, using rules of construction related to public land grants).

[42]    *Cf. Branch v. Occhionero*, 681 A.2d 306, 308-09 (Conn. 1996) (noting that both dominant and servient estates must be identified to create easement appurtenant); *Mackiewicz v. Metzger*, 750 N.E.2d 812, 817 (Ind. App. 2001) (same).

[43]    IM 91-196, *supra* note 12, at 1 (emphasis added).

[44]    *Green*, 586 P.2d at 601 (quoting 43 C.F.R. § 271.16(c) (1954)).

[45]    *Id.*

[46]    *City of Phoenix v. Kennedy*, 675 P.2d 293, 295 (Ariz. App. 1983).

in the Department of Interior advised the BLM that the rights-of-way reserved under the Small Tract Act were common law dedications to the public for utilities and roads.[47] The two BLM instruction memoranda we have discussed also describe the rights-of-way as common law dedications.[48] Because the BLM has not, as far as we are aware, promulgated regulations to the effect that these rights-of-way are common law dedications, we need only defer to the BLM's interpretation to the extent we find it persuasive.[49] We find the BLM's interpretation persuasive in light of the purpose of the Small Tract Act and the longstanding nature of the interpretation[50] and hold that the right-of-way at issue here was an express offer of common law dedication to the public.

A common law dedication is not complete until the offer has been accepted.[51] Because neither party expressly presented the theory of common law dedication to the superior court, the court did not have the opportunity to consider whether the offer of dedication had been accepted. We have previously held that acceptance of an offer of dedication "may occur through a formal official action or by

---

[47] Memorandum from Associate Solicitor, Division of Public Lands, to the Director, Bureau of Land Management, Elimination of a Right-of-Way Reservation from Patent 2 (Aug. 5, 1957).

[48] IM 91-196, *supra* note 12, at 1-3; GUIDE BOOK, *supra* note 29, at 1-94, 1-97 to -99.

[49] *Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1165 & n.48 (Alaska 2009) (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).

[50] *See Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (noting that more deference is given "to agency interpretations that are 'longstanding and continuous.' " (quoting *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1119 (Alaska 2007))).

[51] *Swift v. Kniffen*, 706 P.2d 296, 301 (Alaska 1985).

public use consistent with the offer of dedication or by substantial reliance on the offer of dedication that would create an estoppel."[52] On remand, the superior court should make findings about whether the offer of dedication has been accepted.

The McCarreys' contention that the Kaylors cannot benefit from the right-of-way because they are not small tract owners conflicts with the idea that the right-of-way was a common law dedication. A common law dedication is a dedication to the public, even when there is no specific grantee.[53] Even though the BLM's instruction memoranda indicate that the rights-of-way were intended to benefit small tract owners, IM 91-196 nevertheless characterizes the rights-of-way as common law dedications and "public easement[s]."[54] The *Guide Book* contains a solicitor's opinion concluding that the regulation authorizing rights-of-way in Small Tract Act classifications was "a clear and explicit manifestation on behalf of the United States to dedicate a portion of each small tract to *public* use."[55]

Although the McCarreys rely heavily on a Nevada state trial court decision[56] in their argument, there are many factual distinctions between the cases. The

---

[52]     *State v. Fairbanks Lodge No. 1392, Loyal Order of Moose*, 633 P.2d 1378, 1380 (Alaska 1981) (citing *Litvak v. Sunderland*, 353 P.2d 381, 384 (Colo. 1960); *City of Carlsbad v. Neal*, 245 P.2d 384, 389 (N.M. 1952); *Tinaglia v. Ittzes*, 257 N.W.2d 724, 730 (S.D. 1977)); *see also Safeway, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 34 P.3d 336, 339 (Alaska 2001) (holding that State's inclusion of street on right-of-way map was formal official action accepting street dedication).

[53]     23 AM. JUR. 2D *Dedication* § 16 (2002).

[54]     IM 91-196, *supra* note 12, at 1-2.

[55]     GUIDE BOOK, *supra* note 29, at 1-99 (emphasis added).

[56]     *Spittler v. Routsis,* No. CV08-02467 2010 WL 2717701, at *2-3 (Nev. Dist. Ct. Apr. 21, 2010), *pending appeal* in Nevada Supreme Court (case No. 56681),
(continued...)

-19-                                    **6767**

Nevada case involved small tract rights-of-way that were used only as driveways; there is nothing in the Nevada trial court's decision to suggest that a road of any type ever occupied the rights-of-way.[57] Here, in contrast, the aerial photographs admitted into evidence show a dirt road leading past the McCarrey lot as early as 1980. The McCarreys do not dispute that as of 1980 there was a "right-of-way road" across their lot.

Finally, the McCarreys argue that the injunction issued by the superior court was too broad. Because we are remanding to the superior court for findings related to acceptance of the common law offer of dedication, we do not reach this issue.

## V. CONCLUSION

For the foregoing reasons, we VACATE the superior court's finding that a public road occupies the right-of-way crossing the McCarreys' lot and REMAND to the court for factual findings about whether the offer of common law dedication was accepted. The court may, in its discretion, hold another hearing or may make findings on the record already before it. We do not retain jurisdiction.

---

[56](...continued)
*available at* caseinfo.nvsupremecourt.us/public/caseView.do?CSIID=24810.

[57]     *Id.*