# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-1996
_____

CBHIV LLC, and SUGAR DUNES
OWNERS ASSOCIATION, INC.,

    Appellants,

    v.

WALTON COUNTY, FLORIDA, a
political subdivision of the State
of Florida, and BEACHSIDE
VILLAS OWNERS' ASSOCIATION,
INC.,

    Appellees.

_____

On appeal from the Circuit Court for Walton County.
David Walker Green, Judge.

March 19, 2025

M.K. THOMAS, J.

CBHIV LLC ("CBHIV") and Sugar Dunes Owners Association, Inc. ("Sugar Dunes") (collectively "Appellants") challenge an amended final judgment denying their complaint for declaratory and injunctive relief against Appellee, Walton County, regarding a boardwalk for beach access. Appellants argue the trial court reversibly erred by finding: (1) that common law offers of dedication of easements to the public were made and timely accepted; (2) that Walton County had an easement by prescription;

and (3) that their claims were barred by laches. Although we reverse as to the second issue, we affirm the remainder of the amended final judgment in favor of Walton County.

## I. Facts

This case arose from a beach-access boardwalk running across pieces of property in Walton County. One of the properties is owned by CBHIV (Lots 16 and 33), and the other (Lot 32) is located to the immediate east and is owned by Sugar Dunes. Appellants assert that while the boardwalk's presence was previously permissive, they subsequently terminated or withdrew permission for use, rendering the boardwalk a continuing trespass. Appellants filed a complaint against Walton County for declaratory and injunctive relief to have the boardwalk removed.

The subject properties were originally conveyed to private owners by way of patent deeds issued in 1955 by the United States pursuant to the Small Tract Act ("STA").[1] The beach dune walkover or boardwalk at issue here is located entirely or almost entirely within the 66-foot strip that is centered between CBHIV's property in Lot 33 and Sugar Dunes's property in Lot 32. The patent deeds at issue each provide, "This patent is subject to a right-of-way not exceeding 33 feet in width for roadway and public utilities purposes . . . ."

In response to Appellants' complaint, Walton County raised laches and common law dedication as affirmative defenses, claiming that Appellants failed to bring any causes of action against it during the more than twenty years it had consistently, openly, and notoriously used the property for a boardwalk for beach access. Additionally, Walton County brought a prescriptive easement counterclaim, noting that the boardwalk was originally built sometime between 1993 and 1996 and was located within the

---

[1] The Small Tract Act authorized the sale of public lands classified as "valuable for residence, recreation, business or community site purposes." *See* 43 U.S.C. § 682(a) (1955).

66-foot area depicted on both the plat of CBHIV[2] and the Sugar Dunes survey and described in the patent deeds.

Prior to trial, the parties stipulated as follows:

- Walton County built the boardwalk in 1993 within the 66-foot easement area identified on the patent deeds.
- The boardwalk remained in the easement area between 1993 and the trial, except for the time when it was being rebuilt. During such time, Walton County maintained and repaired the boardwalk.
- Between 1993 and the trial, except for the time when the boardwalk was under repair, the public continuously used the boardwalk to access the wet sand and water.
- The boardwalk was damaged in 1995 and repaired and remained in the same location until it was damaged again in 2005. The boardwalk remained in the same location between 2005 and 2018.
- The boardwalk, as reconstructed in 2019, is in a slightly different location than the previously existing boardwalk.
- The case deals solely with accessing the wet sand and Gulf of Mexico over the boardwalk. The use of the sandy beach for purposes other than traversing it is not at issue in the case.
- The filing of the complaint constituted Sugar Dunes's attempt to terminate any permission previously granted for the use of its properties.

Multiple witnesses testified at trial. Richard Murray, a long-time title examiner, testified that he did not find conveyances from the federal government to Walton County of any rights to any of the subject property and the original plat did not reflect easements on the property. He acknowledged that all three patent deeds at issue contained language instructing that the patents were subject to a right-of-way not exceeding 33 feet in width for roadway or public utilities. Further, he confirmed that the federal patent deeds were issued pursuant to the STA.

---

[2] A portion of CBHIV's property became Beachside Estates. For simplicity purposes, CBHIV encompasses Beachside Estates when referenced in this opinion.

Daryl Burgis, a registered land surveyor, testified that he prepared the plat for CBHIV and that the plat did not dedicate any property to the public. However, he admitted that the plat declared a 33-foot-wide public access and utility easement. He also performed a survey of the CBHIV property and testified that the owners of the property were aware the boardwalk was on their property. He confirmed that the boardwalk was in various places between 1999 and 2021. Regarding the Sugar Dunes's property, Mr. Burgis testified that the property included a 33-foot easement, which he believed was a government patent easement. The easement and boardwalk were depicted on surveys his office completed in 2005 and 2015. Mr. Burgis noted that the plats provide "that all public areas are shown in this plat, unless otherwise stated, shall be deemed to have been dedicated to the public for uses and purposes thereon stated."

An owner at Sugar Dunes since about 2001 or 2002 and board member until 2020, Melinda Lewlellen, testified that people have walked on the boardwalk from Beachside Drive and that Sugar Dunes permitted the general public to use Sugar Dunes's beach without objection. She acknowledged that Sugar Dunes was aware that at least a portion of the boardwalk was on their property.

Following a trial, the lower court issued a final judgment and amended final judgment. The trial court determined that Walton County proved the defenses of common law dedication and laches, but even if it had not, Walton County provided sufficient evidence to establish that an easement by prescription had been established. Accordingly, the trial court denied Appellants' request for injunctive relief to remove the boardwalk. This timely appeal followed.

II. Analysis

*A. Common Law Offers of Dedication*

Whether the trial court erred in finding a common law offer of dedication presents mixed questions of law and fact. Factual findings are reviewed for competent, substantial evidence, and questions of law are reviewed de novo. *See Greenberg v. Bekins of*

4

*S. Fla.*, 337 So. 3d 372, 375 (Fla. 4th DCA 2022); *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 283 (Fla. 1st DCA 2003).

A common law dedication is a setting apart of land for public use by its owner, but it does not divest the owner of title to the land. *See Bonifay v. Dickson*, 459 So. 2d 1089, 1093–94 (Fla. 1st DCA 1984) ("[C]ommon law dedication leaves ownership of the land in the dedicator, giving to the public rights of easement only."). Common law dedication requires (1) an offer to dedicate the property for public use and (2) acceptance of the offer by the public. *See Mathers v. Wakulla Cnty.*, 219 So. 3d 140, 143 (Fla. 1st DCA 2017) (citing *Bonifay*, 459 So. 2d at 1093–94). An offer of dedication is not binding until there has been an acceptance, and generally, an offer of dedication remains effective until withdrawn by the donor or rejected by the donee. *See Flowers v. Seagrove Beach, Inc.*, 479 So. 2d 841, 843 (Fla. 1st DCA 1985). An offer to dedicate land for public use may be revoked by the dedicator at any time before the public accepts it. *See id.* And to constitute a dedication, there must be acceptance of the dedication before the offer is revoked or withdrawn. *See Anderson v. Town of Groveland*, 113 So. 2d 569, 571 (Fla. 2d DCA 1959) (holding that the offer to dedicate could be accepted any time prior to its withdrawal). Acceptance may be implied from any acts on the part of public authorities showing an intention to accept. *Mathers*, 219 So. 3d at 143; *Bonifay*, 459 So. 2d at 1094.

The trial court determined that the easement right-of-way language contained in the patents issued under the STA constituted a common law offer of dedication, and that acceptance of the offer occurred by Walton County's construction, rebuilding, and continuous maintenance of the boardwalk and the uninterrupted use by the public for approximately twenty-seven years without objection from the property owners. Furthermore, the trial court found the property at issue was offered to, and accepted by, the public for use as a way of access to the Gulf of Mexico. Regarding the language of the patent deeds that "[t]his patent is subject to a right-of-way not exceeding 33 feet in width for roadway and public utilities purposes," the trial court determined the boardwalk fell within this dedication.

5

Citing the 1976 Black's Law Dictionary definition of "roadway," the trial court reasoned:

> The nature of the beachfront, with eroding sand and an ever-changing shoreline, precludes use of a wide, paved thoroughfare. Such a roadway would soon be consumed by the forces of nature which frequently batter the coastline. A boardwalk, as constructed on the easement area, provides the most effective and appropriate roadway or open way or public passage from the adjoining county street to the Gulf.
>
> . . . .
>
> [T]he depiction of the 33-foot strip on each parcel as an easement, or as a public access easement, without limitation to roadway purposes, coupled with the complete acquiescence of the plaintiffs and their predecessors in title to use of the property for a public boardwalk and the statements by [Sugar Dunes's] attorney, clearly establish the intent of the owners to dedicate the property for access to the Gulf, regardless of whether the boardwalk might, or might not, under other circumstances, fall within the definition of the term "roadway."

Notably, Appellants do not challenge that the "subject to" language in the patent deeds was an offer of dedication. Instead, they argue that the offer was not timely accepted and that the boardwalk was not within the scope of the offer of dedication. Initially, Appellants claim that the offer of dedication had to be accepted prior to the 1976 repeal of the STA because the repeal of the Act terminated all small tract classifications, and as a result, if the right-of-way had not been used before repeal of the STA, the right-of-way "disappeared." This is a matter of first impression in Florida.

We look to the language of the STA and patent deeds to determine whether under the STA the offer had to be accepted prior to its repeal. Also, both parties agree that the United States Department of the Interior's Instruction Memorandum 91-196 (IM

91-196), issued on February 25, 1991, is persuasive.[3] IM 91-196 explained how small tract rights-of-way are common law dedications:

> From 1949 until the Small Tract Act was repealed in 1976, a right-of-way along the borders of each tract was available for public use as provided in the terms on the lease form, the classification order, or through the regulation requirements. The right-of-way remained available as long as the lands were classified for small tract use. These rights-of-way were determined to be common law dedications and had the effect of a public easement. However, until acceptance by use of the easement made the dedication complete, the United States could revoke or modify the offer to dedicate in whole or in part. Said another way, unless the common law rights-of-way were actually used for a road or public utilities to serve a small tract, the dedication disappeared with the termination of classification. To the extent that the common law dedications were accepted through use by appropriate parties prior to revocation of the classification, those rights are protected by the provisions of 43 U.S.C. 1701(a) and 43 U.S.C. 1769.

IM 91-196 also explained what rights remained with the federal government upon issuance of a small tract patent:

> Upon issuance of a small tract patent, the Secretary is deprived of all rights to the lands except those specifically reserved to the United States. Under a common law dedication, fee title lies with the owner of the land subject to the easement of the public for use of the land. The government transfers all its interest in and

---

[3] We recognize that the Supreme Court recently overturned *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), in which courts are instructed to defer to an agency's interpretation. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Courts are now required to exercise their independent judgment in interpreting the law. *See id.*

jurisdiction over the lands as completely as if the patent had been made subject to a right-of-way in favor of a named holder of such right-of-way. The government has no legal power, except under eminent domain proceedings for some governmental purpose, to eliminate this restriction for the patent.

The memo further instructed that "[o]nce rights-of-way become dedicated public easements through use by the public, the dedication may be abandoned only by proper authority pursuant to due course of law."

Because Florida has yet to address the legal question of whether an offer of dedication under the STA must have been accepted prior to the Act's repeal, the parties rely on out-of-state cases in support of their arguments. Walton County cites to *McCarrey v. Kaylor*, 301 P.3d 559 (Alaska 2013). *McCarrey* involved two adjoining lots, with one of the lots originating from a federal land patent, which reserved a right-of-way across the northern boundary of the lot. *Id.* at 560. The McCarreys argued that use of the right-of-way reserved in the land patent had to be established prior to the repeal of the STA. *Id.* at 564. The Alaska Supreme Court rejected the argument explaining:

IM 91-196 does not discuss how a small tract classification is terminated. And the language of [Federal Land Policy and Management Act of 1976] FLPMA, [Bureau of Land Management] BLM regulations and notices, and a BLM instruction memorandum from 1980 all indicate that FLPMA did not automatically terminate Small Tract Act classifications existing at the time of repeal. Section 102(a)(3) of FLPMA, codified at 43 U.S.C. § 1701(a)(3), directs review of "existing classifications of public land that were affected by executive action or statute before October 21, 1976." BLM's current regulations indicate that lands segregated under the Small Tract Act remain segregated, and the BLM has published notices terminating Small Tract Act classifications after 1976. Finally, in The Small Tract Act: Guide Book for Managing Existing Small Tract Areas, Instruction Memorandum No. 80-540, the BLM noted

that "[t]he classification and accompanying segregation []
continue until revoked, even though the [Small Tract Act]
has been repealed.

*Id*. at 566. Thus, the Alaska high court held the repeal of the STA
did not terminate the common law dedication and remanded the
case for consideration of whether the offer was accepted.[4] *Id*. at
568.

But Appellants argue that the courts of Nevada reached the
opposite conclusion in *Spittler v. Routsis*, Case No. CV08-02467,
2010 WL 2717701 (Nev. Dist. Ct. Apr. 21, 2010). In *Spittler*, the
district court rejected the argument that a common law dedication
existed and was accepted by Spittler because his land was not the
type to benefit from the STA as the Act encompassed only small
tracts and only easements to access those small tracts. *Id*.
However, this case is distinguishable. The Nevada court did not
rule on the direct issue of whether common law dedications were
terminated upon the repeal of the STA. Instead, the court found
only that Spittler did not have a common law easement because
his land was not part of the initial transfer under the small tract
act conveyance the easement was meant to benefit. *Id*.[5] The
district court did not rule on the issue of whether the common law
dedication had to be accepted prior to the repeal of the STA.

---

[4] Of note, the parties in *McCarrey* agreed at trial that "the
roadway provisions of the [STA] were inapplicable" because of its
1976 repeal. 301 P.3d at 564. Finding that "stipulations as to the
law are not binding upon the court," the Alaska Supreme Court
declined to accept the agreement of the parties and applied its
independent judgment. *Id*. at 565.

[5] In an unpublished opinion, the Nevada Supreme Court
affirmed the district court's decision. *See Spittler v. Routsis*, 129
Nev. 1153 (Nev. 2013). Pursuant to Rules of Nevada Appellate
Procedure, unpublished decisions of the Nevada Supreme Court
have no precedential value if issued before January 1, 2016. *See*
Nev. R. App. P. 36.

We find the decision in *McCarrey* persuasive and adopt its reasoning. As the Alaska Supreme Court pointed out, IM 91-196 does not address how a small tract classification is terminated. The Department merely instructed that "unless the common law rights-of-way were actually [accepted], the dedication disappeared with the termination of the classification." *McCarrey*, 301 P.3d at 566 (quoting IM 91-196). It is void of any language that offers of dedication would "disappear with repeal of the Small Tract Act." Further, IM 91-196 details that "the Secretary is deprived of all rights to the lands except those specifically reserved to the United States" and that the government transfers all interests in the land, further supporting the argument that the offer of dedications contained in the land plats could be accepted after repeal of the STA.

As in *McCarrey*, IM 80-540 was included in this record on appeal. Under the Question-and-Answer section of the memoranda, the following question was posed: "In view of the repeal of the Small Tract Act, are lands included in Small Tract orders still segregated?" The Department responded, "The classification and accompanying segregation, continue until revoked, even though the Act has been repealed," indicating a distinction between revocation of a classification and repeal of the act. As in *McCarrey*, we find that acceptance of the offer of dedication here was not untimely because it did not have to occur prior to repeal of the STA in 1976.

Next Appellants argue the trial court erred in finding an offer of dedication because the boardwalk was outside the scope of the offer. That is, the boardwalk at issue does not fall within the patent offer because it is not a "roadway" or "public utility." The patents state, "This patent is subject to a right-of-way not exceeding 33 feet in width for roadway and public utilities purposes . . . ." We need not decide if a public boardwalk is a type of public utility. Regarding the term "roadway," one method of determining the ordinary meaning of statutory language is to consult a dictionary. *See Conage v. United States*, 346 So. 3d 594, 599 (Fla. 2022); *B&A Gourmet Foods, LLC v. Mora-Abreu*, 352 So. 3d 29, 31 (Fla. 1st DCA 2022).

10

We find the language of the patent deeds to be clear and unambiguous. However, as in statutory interpretation, we are called upon to define the term "roadway" to answer the question of scope. As in *Conage*, it would be a mistake here to define the term "roadway" in isolation, without considering the context. *See Conage*, 346 So. 3d at 598.

The trial court cited to the 1976 Black's Law Dictionary's definition of "road" in its determination that the boardwalk was not outside the scope of the offer. At the time the STA was repealed in 1976, "road" was defined as "an open way or public passage." In 1938, when the STA was enacted, Black's Law Dictionary (3d ed.) defined it as "a highway, an open way public passage; a line of travel or communication extending from one town or place to another." In 1955, when the subject patents were issued on the subject properties, the definition was the same. Black's Law Dictionary (4th ed.). Merriam-Webster currently defines "road" as "an open way for vehicle, persons, and animals."[6] *Road*, Merriam-Webster's Online Dictionary, https://merriam-webster.com/dictionary/road (last visited Nov. 22, 2024).

Regardless of the editions cited above, the dictionaries are essentially uniform in their definitions of "roadway." Thus, relying upon the definition at the time of repeal, the trial court did not err in its determination that the boardwalk did not fall outside the scope of the offer of dedication. We agree with Walton County that the roadway reservation is not limited to paved surfaces or to vehicular use and did not dictate any itinerary or destination. It is undisputed that the boardwalk provides a way of passage from the upland to the Gulf of Mexico. The trial court correctly found that, due to the nature of the beachfront, "a boardwalk, as constructed in the easement area, provides the most effective and appropriate

---

[6] In a 1996 law review article, the author stated that in 1860 and 1865 Webster's American Dictionary defined "road' as "an open way or public passage." *See* Michael Wolter, *Revised Statutes 2477 Rights-of-Way Settlement Act: Exorcism or Excise for the Ghosts of Land Use Past?*, 5 Dick. J. Env't. L. Pol'y 315, 339 nn.151–52 (1996).

roadway or open way of public passage from the adjoining county street to the Gulf."

Regardless, even if we determined that the boardwalk is outside the scope of the offer of dedication, the evidence of record showed that the property owners intended to dedicate the property for access to the Gulf, without limitation to roadway purposes. In so ruling, the trial court cited the original patents, the plats filed by the owners of the property when it was platted, the acquiescence of Appellants and their predecessors in title to use the property for a public boardwalk, and statements by Sugar Dunes's attorney as evidence in support of its holding.

Indeed, an intention to dedicate may be implied from the act of the landowner filing a plat or map of one's property "indicating thereon places for parks, public grounds, and streets." *Bonifay*, 459 So. 2d at 1094 (citing *City of Palmetto v. Katsch*, 98 So. 352 (Fla. 1923)). While Appellants concede that the rights-of-way identified on the patent deeds are shown on both plats, they claim that the evidence does not establish that that depiction was done with the intention of dedicating the disputed easements to public use. But Sugar Dunes's plat identifies the easement as a "Public Access & Utility Easement," thereby undermining its argument. In fact, it is apparent that CBHIV modified and expanded the original patent deed reservation from "roadway and public utilities" to "public access and utility easement." Sugar Dunes's plat simply identifies an easement. Appellants attempt to minimize the weight of the plats by pointing out that the plats state that no rights were being dedicated to the public. However, we agree with Walton County that the only logical reading of the plat is that it did not intend to create any rights in the public other than those already depicted. *See N. Lauderdale Corp. v. Lyons*, 156 So. 2d 690, 692 (Fla. 2d DCA 1963) ("The plat must be construed as a whole and every part of the instrument given effect."). Finally, if the plats are ambiguous, "the construction must be against the dedicator and in favor of the public." *Id.*

Furthermore, the trial court's ruling is supported by additional evidence beyond the plats. In a letter sent from Mr. Borowski, the attorney for Sugar Dunes, he stated, "there is a 66-foot right-of-way reserved for the public for the sole purpose of

access to the water" and asked that members and guests stay within the easement area and not trespass on the property west of the easement. And Sugar Dunes acquiesced to the public's use of the boardwalk for well over twenty years. *See Brevard Cnty. v. Blasky*, 875 So. 2d 6, 11 (Fla. 5th DCA 2004) (holding that one of the most common ways for a property owner to express its intent to dedicate lands for public use is "acquiescence of the owner in the use of his property by the public for public purposes") (citing *Katsch*, 98 So. at 353). Finally, 2018 meeting minutes for Sugar Dunes show a resident attorney spoke with the committee regarding customary use and advised that CBHIV has a recorded easement to walk through the private beach to the public area.

### B. Easement by Prescription

The trial court's factual findings are reviewed for competent, substantial evidence. *See Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 283 (Fla. 1st DCA 2003).

Alternatively, the trial court determined that even if Walton County had not established a common-law dedication, it had proven an easement by prescription. The trial court explained as follows:

> Since 1993, when the County constructed the original boardwalk, it has maintained the boardwalk within the easement area, and it has been in essentially the same location. The boardwalk was placed in the easement area with the understanding that the County and the public had the right to use it for boardwalk purposes and access to the beach, and its use has always been open and obvious. The plaintiffs and their predecessors had actual knowledge of its use, inconsistent with the rights the plaintiffs now claim, and such use has continued uninterrupted for a period of over twenty years. Any claim that the plaintiffs allowed the use under the belief until recently that the County had the right to use, or that it was not on their property, does not defeat the claim of adversity.

Appellants assert that the trial judge erred in this ruling because dedication and prescription are not alternative legal theories that can arise out of the same set of underlying facts. We agree and reverse.

A party may establish entitlement to a prescriptive easement by proving the following four elements:

> (1) that he or she and any predecessors in title have made actual, continuous and uninterrupted use of the lands of another for the prescriptive period (twenty years); (2) that (when the claim is to a right-of-way) the use has entailed a definite route with a reasonably certain line, width and termini; (3) that the use has been either with the actual knowledge of the owner or so open, notorious and visible that knowledge of the use must be imputed to the owner; and (4) that the use has been adverse to the owner—that is, without permission (express or implied) from the owner, under some claim of right, inconsistent with the rights of the owner and such that, for the entire period, the owner could have sued to prevent further use.

*Okefenoke Rural Elec. Membership Corp. v. Dayspring Health, LLC*, 300 So. 3d 371, 372 (Fla. 1st DCA 2020) (quoting *Suwannee River Water Mgmt. Dist. v. Price*, 651 So. 2d 749, 750 (Fla. 1st DCA 1995)). "Because the law does not favor the acquisition of prescriptive rights, use or possession of another's land is presumed to be subordinate to the owner's title and with the owner's permission." *Dan v. BSJ Realty, LLC*, 953 So. 2d 640, 642 (Fla. 3d DCA 2007). And "all doubts as to the adverse character of a claimant's pattern of use must be resolved in favor of the lawful owner of the property." *Id.* (quoting *Phelps v. Griffith*, 629 So. 2d 304, 305 (Fla. 2d DCA 1993)).

Finding the first three elements of prescriptive easements met, we turn to the last element—that the use was adverse to the owner. Appellants acknowledge that the public use of the easement for the boardwalk was with their permission prior to filing their claim for injunctive relief. But this defeats the claim for prescriptive rights. The use of the property for prescriptive easement purposes must be adverse. *Farley v. Hiers*, 668 So. 2d

14

248, 250 (Fla. 1st DCA 1996). Most often this is proven by evidence a property was locked, or that use by others was prohibited or without permission.

Several cases are illustrative regarding the required "adversity." In *Dan*, 953 So. 2d at 641–42, the plaintiffs appealed a final judgment holding that they did not have a prescriptive easement over a twenty-five-foot strip of land owned by BSJ. The land was a private roadway which had been used for over thirty years by the abutting warehouse owners and tenants to gain access to the rear of their respective properties without any objection but without any express permission. *Id.* at 641. Sometime in 2002, BSJ built a fence restricting the plaintiffs' use of the private roadway to gain access to the rear of their warehouses. *Id.* The Third District affirmed the final judgment, holding that "the plaintiffs failed to establish that their predecessors' use during the prescriptive period was adverse, under claim of right, and inconsistent with the lawful owners' use and enjoyment." *Id.* at 642. The court explained:

> The record evidence indicates that the defendants' predecessors allowed the plaintiffs and their predecessors to freely use the private roadway and that both the defendants' predecessors and the plaintiffs' predecessors used the private roadway for the same common purpose—to access the rear of their warehouses. This use in common with the owner is presumed to be in subordination of the owner's title and with his or her permission. *See* [*Guerard v. Roper*, 385 So. 2d 718, 721 (Fla. 5th DCA 1980)]. Further, there is no evidence indicating that the defendants' predecessors attempted to restrict access to the private roadway or that the plaintiffs or their predecessors ever asked for or received permission to use the private roadway. The record does not contain sufficient evidence to support a finding that the use of the private roadway by the plaintiffs and their predecessors in title was inconsistent with the lawful owners' use and enjoyment of the private roadway.

*Id.* at 642–43.

15

In *Crigger v. Florida Power Corp.*, 436 So. 2d 937, 939 (Fla. 5th DCA 1983), the issue presented was "whether an express easement given by one of several co-owners of land renders user under the authority of the easement permissive rather than adverse." The plaintiffs filed an inverse condemnation action against Florida Power, alleging that the power company had appropriated a right-of-way for power lines without their permission. *Id.* The power company claimed as an affirmative defense that it had acquired an easement by prescription over the property. *Id.* The trial court agreed and entered judgment for Florida Power. *Id.* at 941. The Fifth District reversed, finding that Florida Power had failed to allege any facts showing that during the prescriptive period its use was adverse to the owner and without the owner's permission, given that the power company claimed that its right was permissive under an easement executed by one of the owners. *Id.* at 945–46, 949.

Here, there is nothing in the record to indicate that Sugar Dunes believed the boardwalk was outside the easement area, which by all accounts it was not. Additionally, it did not claim that it was under a mistaken belief that Walton County had the power to place the boardwalk in the easement area. Rather, Appellants acquiesced that the boardwalk was previously placed and used with their permission, which they later revoked. The parties stipulated that the filing of the complaint constituted Appellants' attempt to terminate any permission previously granted for the use of their properties. Additionally, Mr. Burgis testified that the Sugar Dunes property owners were aware the boardwalk was on their property. And Ms. Lewellen testified that people have walked on the boardwalk from Beachside Drive and that Sugar Dunes permitted members, guests, and the general public to use its beach without objection. Thus, the evidence was not sufficient to overcome the presumption that use of the easement was permissive. The required element of adversity was not established. Accordingly, we reverse as to the trial judge's finding that a prescriptive easement was established by Walton County.

## C. Laches

A trial court's application of the doctrine of laches is "reviewed for abuse of discretion, provided there is competent, substantial

evidence for each element of the doctrine . . . .” *Dep't of Revenue ex rel. Thorman v. Holley*, 86 So. 3d 1199, 1202–03 (Fla. 1st DCA 2012) (citing *Sun Cruz Casinos, L.L.C. v. City of Hollywood, Fla.*, 844 So. 2d 681, 684–85 (Fla. 4th DCA 2003)).

The trial court found Sugar Dunes's claims were barred by laches, explaining:

> The court finds, however, that [Sugar Dunes] and their predecessors' inaction and apparent acceptance of the right of Walton County both to use the easement and build the boardwalk on it, their silence for nearly thirty years about any objections they might have, despite having numerous surveys showing the location of the boardwalk, the County's reliance on their lack of assertion of any claims by spending many thousands of dollars in constructing and maintaining the boardwalk . . ., and the defendants' taking advantage of the county's efforts by using the boardwalks themselves, along with passage of such time that none of the parties was able to present any testimony of the persons who knew of the events surrounding the construction of the original boardwalk, make it inequitable to allow the plaintiffs to now challenge the construction of the boardwalk.

Appellants argue the trial court erred in finding laches barred their claim because it was not the act of Walton County building the boardwalk that gave rise to the claim, but rather, it was their termination or withdrawal of permission for the boardwalk that gave rise to the claim. Appellants cite no case law to support this argument. We find no abuse of discretion.

The four elements that must be satisfied for laches are as follows:

> (1) conduct on the part of the defendant giving rise to the situation of which the complaint is made; (2) failure of the plaintiff to assert his or her rights by suit, even though the plaintiff has had knowledge of the defendant's conduct and has been afforded the opportunity to

17

institute suit; (3) lack of knowledge on the defendant's part that the plaintiff would assert the right on which he or she bases the suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the plaintiff or the suit is held not to be barred.

*Holley*, 86 So. 3d at 1203.

Logically, the construction and continued use of the boardwalk by the public gave rise to the claim. Appellants sought the following relief in their complaint: (1) declaration that the existence of the boardwalk constitutes a continuing trespass; (2) declaration that they have a clear legal right to have the boardwalk removed from the subject properties; (3) setting of a timeline for removal of the boardwalk, and if boardwalk is not removed during that time, allowing them to remove the boardwalk; and (4) an injunction enjoining Walton County from constructing a new boardwalk on the properties without their permission. By the very relief sought in the complaint, it is indisputable that the presence of the boardwalk gave rise to the claim—not Appellants' decision to withdraw their permission. As Walton County astutely points out, holding otherwise would allow a plaintiff to bring a declaratory judgment action at any time, free of laches, and simply say that the conduct of the defendant, however long ago, did not give rise to the claim because the plaintiff had not yet decided to revoke permission and bring a claim.

Because Appellants fail to establish an abuse of the trial court's discretion, we affirm on the issue of laches. *See Mercer v. Keynton*, 127 So. 859, 861 (Fla. 1930) (holding that delay in seeking injunction to restrain violation of restrictive covenants until after building had progressed warranted denial of the injunction).

### III. Conclusion

We affirm the portion of the final judgment holding that common law offers of dedication of easement were made and timely accepted. Furthermore, the trial court's acceptance of Walton County's laches defense is affirmed. We reverse the final judgment to the extent it found the existence of a prescriptive easement.

Accordingly, we ultimately affirm the trial court's denial of Appellants' claims for declaratory and injunctive relief.

AFFIRMED in part, REVERSED in part.

LEWIS and LONG, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Darryl Steve Traylor, Jr., and T.A. Borowski, Jr., Borowski & Traylor, P.A., Pensacola, for Appellants.

Lana Crucin and Gary A. Shipman, Dunlap & Shipman, P.A., Santa Rosa Beach, for Beachside Villas Owners' Association, Inc.

Clay B. Adkinson, Adkinson Law Firm, LLC, DeFuniak Springs, for Walton County, Florida.